**D. Elizabeth REAGAN, Appellant,**

v.

**CITY NATIONAL BANK, N.A., Appellee.**

**No. 11–86–046–CV.**

Court of Appeals of Texas, Eastland.

July 10, 1986.

Rehearing Denied July 31, 1986.

David L. Evans, Hooper & Evans, Fort Worth, for appellant.

Jay A. Brandt, Gardere & Wynne, Dallas, for appellee.

RALEIGH BROWN, Justice.

This case involves a suit on a note and a counterclaim alleging usury. On October 20, 1981, Anna D. Smith borrowed the principal sum of $22,600.00 from City National Bank, N.A., located in Mineral Wells, Texas, for the purpose of purchasing a computer for her bookkeeping business. The rate of interest on the note was 19.5%, and the payments were to be made in 60 installments of $621.17 each. Smith made payments on the note from November of 1981 through August of 1983. On or about January 18, 1983, A.D. Stone and City National Bank entered into an agreement whereby Stone, as guarantor for an unlimited amount, agreed to pay the debts and liabilities owed by Smith to City National Bank. Smith subsequently sold her bookkeeping business to D. Elizabeth Reagan. The sale of the business included the sale of the computer financed by City National Bank. It is undisputed that Reagan, thereafter, went to City National Bank on September 13, 1983, and signed, in the space designated "co-signer," the same note originally executed by Smith to City National Bank on October 20, 1981. The only payment made by Reagan was in September of 1983.

On July 16, 1984, City National Bank filed suit against Smith, Stone, and Reagan alleging that payment had not been made in accordance with the terms of the note and that the note was in default. City National Bank sought judgment against Smith, Stone, and Reagan for the principal balance of $20,424.92 due on the note, plus interest and attorney's fees. Reagan's third amended original answer and first amended original counterclaim generally denied each and every allegation in City National Bank's petition and set up, as defenses and counterclaims, usury,[1] failure of consideration, waiver of federal law pertaining to penalties for usury, and Deceptive Trade Practices Act, TEX.BUS. & COM.CODE ANN. sec. 17.41 et seq. (Ver-

---

1. The rate of interest which a national bank may charge "on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt" is provided for in 12 U.S.C.A. sec. 85 (West Supp.1986). Generally, Section 85 states that a national bank may charge interest at a rate allowable by the laws of the state where the bank is located. The issue of usury, therefore, is determined by reference to State law. The federal penalty for usury is set out in 12 U.S.C.A. sec. 86 (West 1945). Such penalty being a "forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it ...," plus a recovery of twice the amount of interest paid. The usury penalty provided for by Texas law is a forfeiture to the obligor of twice the amount of interest charged "or time price differential and default and deferment charges contracted for, charged or received...." See TEX.REV.CIV.STAT.ANN. art. 5069–8.01(a) (Vernon Pamph.Supp.1986).

non Pamph.Supp.1986), violations. City National Bank subsequently entered into an agreement with Smith and Stone settling their disputes. On August 24, 1984, the trial court entered an "Agreed Order of Dismissal" dismissing with prejudice all claims alleged by City National Bank against Smith and Stone and all counterclaims alleged by Smith and Stone against City National Bank.

On January 17, 1986, the trial court entered a judgment reciting that an instructed verdict had been granted in favor of City National Bank against Reagan. The judgment awarded City National Bank $14,101.00 (the balance due after credit for the sums paid by Smith and Stone) together with court costs. It was further ordered that Reagan take nothing on her counterclaims against City National Bank.

Through two points of error, Reagan, who sought usury penalties only under Texas law, argues that the trial court erred in instructing a verdict on the basis that: (1) the federal usury penalty could not be waived by a national bank; and (2) there was no evidence that City National Bank waived the federal penalty for usury. It is Reagan's position that the federal penalty for usury can be waived by a national bank. Moreover, Reagan contends that City National Bank waived the federal penalty by including, in the promissory note under dispute, the following language:

> Nothwithstanding any provision of this Contract or any other agreement signed by Customer to the contrary, Customer shall have all rights granted by, and Creditor shall be limited by all prohibitions of, either Chapter 3 or 4 of the Texas Credit Code, as designated on the bottom line of the preceding page of this Contract (Designated Chapter) (Articles 5069–3.01 et seq.; 5069–4.01 et seq.). In no event shall this loan be secured by a lien in real estate.

It is the position of City National Bank that the usury penalties provided by federal law cannot be waived by a national bank. In addition, City National Bank, through a cross-point, contends that the interest rate applied to the note in question was not usurious under Texas law and, therefore, we need not address the issue of waiver of federal usury penalties. We agree with City National Bank's cross-point. Therefore, appellant's points of error become immaterial.

When reviewing the granting of an instructed verdict, the task of an appellate court is to determine whether there exists any evidence of probative force which raises a fact issue on the material question presented. See *Collora v. Navarro,* 574 S.W.2d 65 (Tex.1978); *Henderson v. Travelers Insurance Company,* 544 S.W.2d 649 (Tex.1976). We must consider all the evidence in a light most favorable to the nonmovant party and disregard all contrary evidence and inferences. See *Collora v. Navarro,* supra; *Henderson v. Travelers Insurance Company,* supra. It is only when reasonable minds cannot differ as to the truth of controlling facts, that the issue can be taken from the jury. See, e.g., *Collora v. Navarro,* supra; *Henderson v. Travelers Insurance Company,* supra; *Najera v. Great Atlantic & Pacific Tea Co.,* 146 Tex. 367, 207 S.W.2d 365 (1948). The trial court, in the instant case, correctly granted the instructed verdict in favor of City National Bank on Reagan's usury counterclaim if, considering the evidence in a light most favorable to Reagan, there existed no evidence of probative force which raised a fact issue for the jury on the claim of usury.

In addition to facts already presented, the only other facts which bear on the issue of usury are as follows: the maximum permissible rate of interest applicable to a note, similar to the one in question, executed in Texas on September 13, 1983, was 18.75%; and the rate charged on the note signed by Reagan, as originally executed and when Reagan made her only payment in September of 1983, was 19.5%. The 19.5% rate was within the permitted range of interest when the note was originally executed on October 20, 1981.

Based on such facts, Reagan's usury contention is that the maximum interest rate

which she can be legally charged is the maximum rate allowable on the date she became liable on the note. Since Reagan did not become liable on the October 20, 1981, note until September 13, 1983, Reagan argues that it is usurious for City National Bank to charge her a rate of interest in excess of 18.75%. In support of her position, Reagan cites TEX.BUS. & COM.CODE ANN. sec. 3.401(a) (Vernon 1968) which provides: "No person is liable on an instrument unless his signature appears thereon."

It is a settled rule of law that the usurious nature of a contract is to be determined at the time of its inception. See *Pinemont Bank v. DuCroz*, 528 S.W.2d 877 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.); *Southwestern Investment Company v. Hockley County Seed & Delinting, Inc.*, 511 S.W.2d 724 (Tex.Civ.App.—Amarillo), *writ ref'd n.r.e. per curiam*, 516 S.W.2d 136 (Tex.1974); see also *Biggs v. Garrett*, 651 S.W.2d 342 (Tex.App.—El Paso 1983, no writ). The position advocated by Reagan urges this Court to disregard such a settled rule of law and determine the usurious nature of a contract by looking to the date when a party becomes liable thereon. We decline to do so. Section 3.401(a) of the Texas Business and Commerce Code does not, as contended by Reagan, have applicability to the present situation; rather, it merely provides that one must affix his or her signature to an instrument before liability thereon will attach. See TEX.BUS. & COM. CODE ANN. sec. 3.401(a) comment 1 (Vernon 1968).

Applying this well settled rule of law for determining the usurious nature of a contract, there is no dispute that the time of inception of the note in question was October 20, 1981. Reagan has made no argument that the note was usurious on such date. The trial court, therefore, did not err in instructing a verdict against Reagan on her usury counterclaim unless Reagan's signature operated to create a new note or operated to renew or extend the terms of payment of the note.

We hold that Reagan's signature did not create a new note. Cf. *Southwestern Investment Company v. Hockley County Seed & Delinting, Inc.*, supra; *Minkert v. Minkert*, 263 S.W. 648 (Tex.Civ.App.—Texarkana 1924, no writ). According to her brief and oral argument, when she signed the note on September 13, 1983, Reagan signed in the capacity of a co-maker. The very definition of co-maker precludes the possibility of Reagan's signature creating a new note. "Maker" is defined as:

> One who makes, frames, or ordains; as a "law-maker." One who makes or executes; as the maker of a promissory note....

BLACK'S LAW DICTIONARY 861 (rev. 5th ed. 1979). The prefix "co" is defined as:

> A prefix meaning with, in conjunction, joint, jointly, *unitedly, and not separately, e.g., cotrustees, co-executors, co-brokers.... (Emphasis added)*

BLACK'S LAW DICTIONARY 233, supra. Co-makers do not execute and create separate instruments. While Reagan was a co-maker of late arrival, she nevertheless signed as a co-maker and, therefore, did not create a new note.

Regarding extension and renewal agreements, TEX.REV.CIV.STAT.ANN. art. 5069–1.04(*l*) (Vernon Pamph.Supp.1986) provides:

> The maximum rate on any contract to renew or extend the terms of payment of any indebtedness at any time incurred, is the applicable ceiling allowed by this Article for a contract entered at the time the renewal or extension is made or agreed to.

See also *Schwab v. Schlumberger Well Surveying Corporation*, 145 Tex. 379, 198 S.W.2d 79 (1946); *Braugh v. Corpus Christi Bank and Trust*, 605 S.W.2d 691 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). In the instant case, the parties did not execute an "extension" agreement or "renewal" note. Reagan signed the note as a co-maker.

Having reviewed the evidence and applicable law, we hold that there is no evidence

of probative force which raises a fact issue on Reagan's claim of usury under Texas law. The trial court correctly granted City National Bank's motion for instructed verdict on Reagan's usury counterclaim.

The judgment of the trial court is affirmed.

### Opinion

### ON MOTION FOR REHEARING

On motion for rehearing, Reagan contends that by her signature the note was altered under TEX.BUS. & COM.CODE ANN. sec. 3.407 (Vernon 1968).

 An alteration of an instrument, to have effect, must be material. See TEX. BUS. & COM.CODE ANN. sec. 3.407 (Vernon 1968). In this regard, Section 3.407 does provide that an alteration is material when the change involves "the numbers or relations of the parties." Case law, however, has declared that the addition of a new maker or obligor is not a material alteration if such addition is obtained with the consent of all the parties. See *Spin-Line Company v. United Concrete Pipe Corporation,* 420 S.W.2d 744 (Tex.Civ.App. —Dallas 1967), *aff'd in part and rev'd in part on other grounds, United Concrete Pipe Corporation v. Spin-Line Company,* 430 S.W.2d 360 (Tex.1968); *Shield v. Hall,* 207 S.W.2d 997 (Tex.Civ.App.—Eastland 1948, writ ref'd n.r.e.); *Taylor Const. Co. v. Clynch,* 196 S.W.2d 700 (Tex.Civ.App.— Amarillo 1946, no writ); 3 TEX.JUR.3d *Alteration of Instruments* sec. 8 (1980); 4 AM.JUR.2d *Alteration of Instruments* sec. 47 (1962); see also TEX.BUS. & COM. CODE ANN. sec. 3.407 comment 1 (Vernon 1968).

In the case at bar, it is undisputed that all parties consented to the addition of Reagan's signature on the note. The alteration, therefore, is not material and has no effect under Section 3.407.

Assuming arguendo that Reagan's signature was a material alteration, Section 3.407 does not operate to create a new note. The effect, rather, of Section 3.407 is that the instrument can be avoided by any nonconsenting party. See *Baldwin v. Has-*

*kell Nat. Bank,* 133 S.W. 864 (Tex.1911); *Laughlin v. Stephenson,* 525 S.W.2d 308 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ); 3 TEX.JUR.3d *Alteration of Instruments* sec. 3 (1980); 4 HAWKLAND, UNIFORM COMMERCIAL CODE SERIES sec. 3–407:02 (1984). Since a new note would not have been created, Reagan would have still been bound by the general rule, expressed in our original opinion, that the issue of whether a contract is usurious is determined at the time of its inception. The time of inception of the contract in question was October 20, 1981.

Reagan's motion for rehearing is overruled.