**B. Randal HARDWICK, Appellant,**

v.

**AUSTIN GALLERY OF ORIENTAL RUGS, INC., Appellee.**

No. 3–88–043–CV.

Court of Appeals of Texas, Austin.

March 15, 1989.

Supplemental Opinion on Denial of Rehearing Oct. 25, 1989.

Chris Jackson, Jackson, Bingaman & Dufour, Austin, for appellant.

Malcom C. Smith, Austin, for appellee.

Before POWERS, GAMMAGE and JONES, JJ.

POWERS, Justice.

In an action for debt, and following a bench trial, the court below awarded Austin Gallery of Oriental Rugs, Inc. judgment against B. Randal Hardwick in the amount of the debt, $5,037.68, together with attorney's fees, post-judgment interest, and costs of court. The court denied the company's claim for additional statutory damages based on Hardwick's usury and deceptive-trade practice. Hardwick appeals from the judgment on a claim that the trial court was without jurisdiction in the cause. The company complains by cross points of the trial court's refusal to award the additional damages. We will reform the judgment to award additional statutory damages for usury, and affirm the judgment as reformed.

## THE CONTROVERSY

The company executed and delivered to Hardwick its promissory note, payable in installments as therein provided and secured by liens on certain real property Hardwick sold contemporaneously to the company. After paying on the note for four years, the company notified Hardwick that it wished to pay the balance of the note, and obtain a release of Hardwick's liens, in order to sell the property to another. Hardwick demanded for the release 10% of the principal and interest owing on the note, believing he was entitled to that sum, under the terms of the note, because the company had paid several installments, including the last, after the date they were due. The company and Hardwick agreed upon an additional $5,037.68 in order to obtain a release of Hardwick's liens. The company paid that sum, obtained Hardwick's release of the liens, then sued him in an action for debt to recover that sum together with additional damages under Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(1) (1987) (providing for forfeiture of three times the amount usurious interest charged, except in cases of accidental and bona fide error), and under the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.50(a), (b) (1987) (providing for recovery of three times actual damages for certain acts and omissions designated in the Act).

Based on findings of fact and conclusions of law made by the trial court, it rendered judgment for the company in the amount of $5,037.68, together with attorney's fees, post-judgment interest, and costs of court, but denied the company's claim for additional damages under the two statutes mentioned above. We will discuss the findings of fact and conclusions of law below in connection with the company's cross points.

Hardwick and the company moved for a new trial on the basis of their respective contentions set out below. The trial court overruled expressly Hardwick's motion; the company's motion was overruled by operation of law.

## HARDWICK'S POINTS OF ERROR

In his answer, Hardwick pleaded the company "is not incorporated" and had no "legal right to bring or prosecute this law suit." At the beginning of trial, Hardwick moved the court to dismiss the company's suit on the basis of Tex.Tax Code Ann. § 171.251 (1982 & Supp.1989) because the company's corporate privileges had been forfeited for its failure to satisfy its franchise-tax requirements. The trial court overruled the motion, and recessed the trial for about 45 minutes, during which the company apparently paid its franchise-tax obligation, and obtained and introduced in evidence a certificate of the Secretary of State, showing the company's corporate existence, and a certificate of the Comptroller of Public Accounts, showing satisfaction of the company's franchise-tax obligation. Hardwick contends on appeal, in two points of error, that the trial court erred in overruling his motion to dismiss, and in granting the 45–minute recess.

In § 171.251, the Legislature directed that the Comptroller shall forfeit the

corporate privileges of a corporation for its failure to file franchise-tax reports and pay the tax. The forfeiture does not amount to a forfeiture of the corporation's charter, but it does affect certain of the corporation's privileges. Section 171.252(1) of the Tax Code provides that one effect of the forfeiture is that "the corporation shall be denied the right to sue or defend in a court of this state." Hardwick contends the statute is "jurisdictional" in the sense that it deprived the trial court of any power in the case save to dismiss the company's suit for want of jurisdiction. We reject Hardwick's theory and points of error.

Nothing in § 171.251(1) purports explicitly to reduce the power of a Texas court over any person, thing or cause of action that falls within the court's jurisdiction absent that statute. Hardwick therefore argues an *inference*—because the statute denies the corporation "the right to sue or defend in a court of this state," then the court has no power to hear and determine a cause of action to which the corporation is a party. The inference is a non sequitur; it is impermissible for several reasons. We shall mention only a few.

Hardwick's theory renders meaningless an essential part of the statute, creates an internal inconsistency therein, and frustrates the legislative purpose behind the statute. By its terms, the statute applies equally to corporate plaintiffs and defendants. *If* the statute deprived the court of jurisdiction to hear and determine the case, then the court would be powerless to render judgment *against* a corporation whose corporate privileges had been forfeited by the Comptroller. This negates the statutory directive that such a corporation shall be denied the right to defend in the case; indeed, it permits the corporate defendant to escape judgment by procuring dismissal of the suit based on its own failure to pay its franchise-tax obligation, a favorable use of the statute that undoubtedly did not fall within the intention of the Legislature that enacted the statute to *encourage* the payment of such obligations. *M & M Construction Co. v. Great American Insurance Co.*, 747 S.W.2d 552, 554 (Tex.App. 1988, no writ). Moreover, it is settled that such a corporate defendant may set up purely passive defenses and its answer may not be stricken; that is to say, the plaintiff must still establish his cause of action in order to recover, the statute notwithstanding, and the corporate defendant may offer evidence that negates the plaintiff's claim. *Bryan v. Cleveland Sand & Gravel Co.*, 139 S.W.2d 612 (Tex.Civ.App. 1940, writ ref'd). These recognized residual rights of the corporate defendant could not exist under Hardwick's theory.

For these reasons, we reject the theory that § 171.251(1) is "jurisdictional" in the sense argued by Hardwick. It is simply a mandatory provision that may be waived but is obligatory in a proper case when raised in a proper time and manner. *Tunstill v. Scott*, 138 Tex. 425, 160 S.W.2d 65 (1942). We therefore overrule Hardwick's points of error.

## THE COMPANY'S CROSS–POINTS

The company complains by way of cross-points that it was denied the damages authorized by Tex.Rev.Civ.Stat. art. 5069–1.-06(1) for usury, and by § 17.50(a), (b) of the Texas Business and Commerce Code for deceptive-trade practices. It complains as well that Hardwick took the present appeal solely for purposes of delay, and without sufficient cause, for which the company requests damages under Tex.R.App.P.Ann. 84 (Pamp.1988). We will sustain the company's usury cross-point, and overrule the others.

The company's note, given for part of the purchase price of real property purchased from Hardwick, was in the original principal sum of $160,000.00. It bore interest at 10% per annum, and was payable in equal monthly installments of $1,334.12 on the first day of each month, principal and interest, for a period of five years. After five years, the balance of the note was due and payable, subject to the company's right to elect to reduce the principal by $40,000.00, and to pay the remainder on other terms. The debt evidenced by the note was secured by a vendor's lien retained in Hardwick's conveyance and by the lien of a deed

of trust executed and delivered by the company to Hardwick's trustee. The note contained a provision that upon default in the punctual payment of the note or any part of it, the company agreed to pay an additional 10% of the principal and interest then owing as attorney's fees, if the note was placed in the hands of an attorney or collected through judicial proceedings.

The company paid the note regularly for about four years. Hardwick testified the payments were late many times; a company officer testified to the contrary. In all events, in July 1984, the company entered into a contract to sell the real property to another, and failed to pay on August 1, 1984 the $1,334.12 installment due Hardwick that day. On learning that the company intended to sell the property, Hardwick demanded 10% of the unpaid balance on his note (about $16,000.00) as a condition of releasing his liens. The company refused, but ultimately agreed with Hardwick, through the title company supervising consummation of the sale of the property, to pay him $5,000.00. That sum, the $1,334.12 due August 1, 1984, and the unpaid balance of the note were retained by the title company and paid over to Hardwick who released his liens. Thereafter, the company filed the present lawsuit to recover the $5,000.00, and statutory damages for usury. The $5,000.00 is the same as the $5,037.68 awarded in the trial court judgment, having been adjusted for reasons that we need not discuss.

The events outlined above are chiefly undisputed in the evidence. In its findings of fact and conclusions of law, the trial court determined as follows: (1) the title company contacted Hardwick "for the payoff on the note" before the "closing" at the title company; (2) Hardwick represented to the title company and to the company that he was entitled "to 10% of the principal balance as a penalty for what Dr. Hardwick considered to be late payments on the note, and initially would not sign a release of lien unless he was paid the additional 10%"; (3) Hardwick refused to release his liens until the company "authorized the title company to withhold at closing and pay out of the sales proceeds due to [the

company] the additional sums" of $5,000.00, $1,344.12, and the unpaid balance owing on the note; (4) in making his demand for the $5,000.00, Hardwick "was acting on the mistaken and unfounded belief that the" attorney's fee provision of the note "supported his claim for an additional 10% of the principal"; (5) the company authorized the title company to pay Hardwick the $5,000.00 "only so that [the company] could close the sale and perform its contract with its buyer"; (6) Hardwick was not authorized by the note, the deed of trust, or any law in requiring the company to pay him the additional $5,000.00, and in refusing to release his liens until paid that sum; (7) the company "was damaged in the amount of $5,045.00 but" entitled to judgment, as damages, in the amount of $5,037.68, that being the amount pleaded by the company as its damages. *Hardwick does not challenge these determinations in his appeal.* For purposes of this case, any sum over the 10% interest expressly charged in the note would be usurious for the reasons given below under the heading "The Applicable Interest Limit."

The company contends the trial court erred in not awarding the triple damages provided in art. 5069–1.06(1). Hardwick replies that the sum of $5,000.00 he demanded was not "interest"; Hardwick's demand for the sum constituted an accidental and bona fide error; a provision of the deed of trust, negativing any intent to charge usury, precludes the statutory damages; and the company waived any complaint by failing to request findings of fact and conclusions of law regarding its usury claims.

Concerning Hardwick's last contention, we hold the relevant facts to be undisputed; and, moreover, the trial court's findings of fact and conclusions of law fully support the award of statutory damages under a proper interpretation of art. 5069–1.06.

■ Article 5069–1.06(1) provides "[a]ny person who *contracts for, charges* or *receives* interest which is greater than the amount authorized by" statute, "shall forfeit to the obligor three times the amount

of usurious interest *contracted for, charged* or *received....*" (emphasis added). The emphasized words distinguish between the three different ways in which usury may cause the statutory forfeiture of triple damages. The company alleged that Hardwick *charged* usury; thus, it is immaterial in this case that the note and deed of trust do not provide on their face for usury, and, indeed, that they negative any intent to contract for usury. *Augusta Development Co. v. Fish Oil Well Servicing Co., Inc.,* 761 S.W.2d 538, 542 (Tex. App.1988, no writ); *Fisher v. Westinghouse Credit Corp.,* 760 S.W.2d 802, 805 (Tex.App.1988, no writ); *Greenland Vistas, Inc. v. Plantation Place Associates, Ltd.,* 746 S.W.2d 923 (Tex.App.1988, no writ). As in the three decisions just cited, the company's usury claim rests on an allegation that Hardwick charged usury *outside* the parties' contract. Moreover, the trial court's findings of fact and conclusions of law *establish* in this case that Hardwick *charged* and *received* the $5,000.00 outside any provision of the note or deed of trust, and outside any provision of law that entitled him to that sum.

█ We hold the $5,000.00 was "interest" because the evidence is undisputed, and the trial court determined expressly, that Hardwick made demand for the $5,000.00 "as a penalty for what [he] considered to be late payments on the note." That is to say, he purported to charge and receive the $5,000.00 as a *late charge* for the company's asserted failure to pay when due the monthly payment of August 1, 1984 (and previous monthly payments as well, according to Hardwick's testimony). Such late charges are *not* "interest" under the *common-law* definition of that word, but the *statutory* definition of "interest," in art. 5069-1.01(a), *includes* the late charges because it includes compensation for the obligor's *detention* of money past the date it is due and payable. Consequently, the late charges demanded by Hardwick must be added to the conventional interest (10%) agreed upon by the parties in arriving at the total compensation charged by Hardwick, and in determining the applicability of the forfeiture provisions

found in art. 5069-1.06. *Parks v. Lubbock,* 92 Tex. 635, 51 S.W. 322, 323 (1899); *Veytia v. Seiter,* 740 S.W.2d 64, 65 (Tex.App. 1987), aff'd, 756 S.W.2d 303 (Tex.1988); *Dixon v. Brooks,* 604 S.W.2d 330, 333 (Tex. Civ.App.1980, writ ref'd n.r.e.); *Watson v. Cargill, Inc., Nutrena Division,* 573 S.W.2d 35, 42 (Tex.Civ.App.1978, writ ref'd n.r.e.); *see generally,* Note, *Late Charges in Deeds of Trust as Usury,* 30 Baylor L.Rev. 174 (1978).

█ The $5,000.00 being "interest," for purposes of the usury statutes, the company would be entitled to three times that sum as a forfeiture provided the $5,000.00 was not charged and received by Hardwick as the result of "an accidental and bona fide error," as provided in art. 5069-1.06. It was Hardwick's burden to establish that fact, and nothing in the findings of fact establishes that fact explicitly. The trial court did determine that Hardwick acted "on the mistaken and unfounded belief that" he was entitled to the $5,000.00 under the attorney's fee provision of the note. However, the trial court's findings also *establish* that Hardwick *intentionally* insisted upon the $5,000.00, even though he acted under a mistaken understanding as to the meaning of the attorney's fee provision of the note. Because the act of charging was intentional, we hold the trial court's finding, as to Hardwick's "mistaken and unfounded belief," cannot be interpreted as a finding of accidental *and* bona fide error. *Lawler v. Lomas & Nettleton Mortgage Investors,* 691 S.W.2d 593, 596 (Tex.1985) (lending institution's intentional act in charging a per diem rate of interest based on a 360-day year not "accidental and bona fide error" when usury results); *Cochran v. American Savings & Loan Ass'n of Houston,* 586 S.W.2d 849, 850 (Tex.1979) (intent in usury cases does not mean intent to charge a usurious rate of interest, but an intent to make the bargain made, lender's subjective intent being immaterial). There being no determination of accidental and bona fide error, the company was entitled to damages equal to three times its actual dam-

ages ($5,037.68), as provided in art. 5069-1.-06.

## THE APPLICABLE INTEREST LIMIT

Our determination of the company's usury cross-point rests on a premise that the 10% annual interest charged in the company's promissory note was the maximum rate of interest Hardwick might lawfully charge the company. Consequently, when the trial court determined expressly that Hardwick charged the $5,000.00 as a penalty for late payments, and that he lacked authority to do so under any "law" or any provision of the note and deed of trust, he necessarily charged usury. The dissent disagrees on, and reasons from, a premise that Hardwick might lawfully have charged as much as 18% annual interest; therefore his demand for and receipt of the $5,000.00 as a penalty for late payments did not result in usury. We should therefore speak to the dissent's theory regarding the 18% interest limitation.

 In the absence of legislation, 10% annual interest is the maximum lawful rate of interest permitted by our State constitution. Tex. Const. Ann. art. XVI, § 11 (Supp.1989). In the absence of any statutory exception, 10% is the maximum lawful rate of interest permitted by statute. Tex. Rev.Civ.Stat.Ann. art. 5069-1.02 (1987). One such statutory exception is found in art. 5069-1.04(a); another is found in provisions of the Texas Miscellaneous Corporation Laws Act, Tex.Rev.Civ.Stat.Ann. arts. 1302-2.09 and 1302-2.09A (1980 & Supp. 1989). Each permits the charging of 18% annual interest, and it is from these statutes that the dissent obtains its premise that Hardwick was entitled to charge 18% interest in the present case. We disagree that these statutory exceptions are applicable to the case insofar as they permit the charging of 18% annual interest.

Article 5069-1.04(a) provides "[t]he parties to any written contract may agree to and stipulate for any rate of" interest up to 18% per annum, or some slightly higher rate calculated in a manner described in the statute. We need not decide whether art. 5069-1.04 applies to non-regulated credi-

tors such as Hardwick. *See* St. Claire and Hogan, *The Revised Usury Ceilings—A New Alice in Wonderland,* 14 St. Mary's L.J. 187, 197 & n. 40 (1983). The 18% rate permitted by art. 5069-1.04(a) may not apply in the present case for quite another reason entirely—it was not in effect at any time material to the determination of the present case.

 Before its amendment in 1981, art. 5069-1.04(a) provided for the maximum rate of 10% annual interest; the 18% rate became effective with the amending statute on May 8, 1981. *See* 1981 Tex.Gen. Laws, ch. 111, § 5 at 274. Under the express findings of fact and conclusions of law made by the trial court, the company executed and delivered its promissory note on September 12, 1980, or some eight months before the 18% rate became effective, and when the governing maximum rate was yet 10%. The governing rate, for determining the existence of usury, is the statutory maximum in effect when the promissory note is executed and delivered, and not any different rate resulting from legislative action thereafter. *Reagan v. City National Bank, N.A.,* 714 S.W.2d 425, 427-28 (Tex.App.1986, writ ref'd n.r.e.); 47 C.J.S. *Usury* § 99, at 195 (1982). Article 5069-1.04 itself assumes and is predicated on that common-law rule, for subsection *1* of the statute creates this exception to the rule: renewals and extensions of existing debts are governed by the maximum lawful rate in effect at the time of the renewal and extension. This explicit exception would hardly be necessary if the subsequently enacted rate governed a preexisting debt and the promissory note given in evidence of it. Because the company's promissory note was executed and delivered when the maximum lawful rate was 10%, even under art. 5069-1.04(a), that is the governing rate for determining usury, and not the 18% rate in effect when Hardwick charged an additional $5,000.00 as a late-payment penalty.

 The dissenting opinion reasons alternatively that arts. 1302-2.09 and 1302-2.09A authorized as much as 18% annual interest in the present case. Article 1302-

2.09 provides that corporations, as opposed to other obligors, "may agree to and stipulate for any rate of interest" up to 18% per annum, and "in such instances," corporations are prohibited to bring a usury claim or defend on the basis of usury. Article 1302–2.09A also applies exclusively to corporations. It provides that *notwithstanding* the provisions of art. 1302–2.09, "any corporation ... may agree to and stipulate for any rate of interest that does not exceed a rate authorized by Article 1.04," which is to say, 18% interest or any slightly higher rate calculated in a manner permitted by art. 5069–1.04. Construing together arts. 1302–2.09 and 1302–2.09A, the effect is this: corporations may not bring a claim of usury or defend on that basis when they agree to and stipulate for a rate of interest up to 18% or any slightly higher rate calculated according to art. 5069–1.04. If we understand correctly the dissent's reasoning, it is this: because these statutes authorize corporations to be charged as much as 18% annual interest, or slightly more, *in the abstract*, any interest charged them *within* those rates cannot possibly be "greater than the amount *authorized* by" the interest subtitle (art. 5069–1.01 *et seq.*), in the words of art. 5069–1.06; consequently, corporations may not recover in such cases the usury penalties authorized by that statute, *whether or not they expressly agree* to pay the 18% interest.

The dissent's interpretation of arts. 1302–2.09 and 1302–2.09A flatly contradicts the express words of those two statutes, independently and in association with each other and art. 5069–1.06, as well as their clearly intended operation and effect. Specifically, the dissent's theory contradicts the words "may agree to and stipulate for," found in both such statutes, and the words "in such instances" found in art. 1302–2.09, and negates the restrictions obviously intended by the Legislature's inclusion of those words in the statutes. The statutes are as plain in their meaning as the words are in ordinary usage: a corporation may not bring a claim of usury, or defend on that basis, even if it is charged interest in excess of 10%, *when the corporation has actually agreed to and stipu-*

*lated for* any higher rate up to 18% or slightly higher. One cannot rationally *read out* of arts. 1302–2.09 and 1302–2.09A the necessity for the corporation's agreement to and stipulation for the higher rates. *Absent* such agreement and stipulation by the corporation, the two statutes simply are not applicable to the case as a possible exception to the 10% limit set by the State constitution and art. 5069–1.02. *Preston Farm & Ranch Supply, Inc. v. Bio–Zyme Enterprises*, 615 S.W.2d 258, 262 (Tex.Civ.App.), aff'd, 625 S.W.2d 295, 300 (Tex.1981). And it *necessarily follows* from the absence of any agreement, that the applicable rate will be 6%, for that is the rate the Legislature prescribed "[w]hen no specified rate of interest is agreed upon by the parties ...," as stated in art. 5069–1.03. *See e.g., Carr Well Service, Inc. v. Skytop Rig Co.*, 582 S.W.2d 500, 503 (Tex.Civ.App.1979, writ ref'd n.r.e.). Far from being "dicta" as claimed in the dissenting opinion, the absence of an agreement in these cases was a *fact that had to be determined before* the "legal interest" rate of 6% could be applicable.

We should say, in addition, that the dissent's fear of a single "penny of interest" resulting in usury, and in the statutory penalties, is unjustified, for the doctrine of *de minimis non curat lex* applies in usury cases as in others. *Thornhill v. Sharpstown Dodge Sales, Inc.*, 546 S.W.2d 151, 152–53 (Tex.Civ.App.1976, no writ). Moreover, careful draftsmanship and good-faith conduct are the obvious remedies for the dilemma posed by the dissent; and, of course, the statutory defense of *bona fide* and accidental error or the bringing of a statutory declaratory-judgment action are always available to prevent injustice or resolve doubts, where applicable to the case.

Finally, we should say that we do not see how the dissent may logically deny the company's usury cross-point, and on that basis *alone* affirm the judgment below in its entirety. As stated previously, the company brought as well a cross-point that the trial court erroneously denied the company the statutory damages prescribed for deceptive-trade practice. Tex.Bus. & Com.

Code Ann. § 17.50 (1987). We overruled that cross-point on the strength of § 17.43 of the Code, which forbids recovery under § 17.50 in addition to penal sums authorized by another statute, in cases like the present. Before the dissent is free to affirm the judgment below, however, it must overrule also the company's cross-point relative to § 17.50, which the dissent has not attempted to determine or discuss.

We therefore sustain the company's claim that it was entitled as a matter of law, under the trial court's findings of fact and conclusions of law, to damages in the amount of $15,113.04, under art. 5069–1.06. We order the judgment reformed to award the company judgment against Hardwick in that amount, in lieu of $5,037.68, but in addition to the other sums awarded by the trial court. We affirm the judgment as reformed.

JONES, Justice, concurring and dissenting.

I fully concur with that portion of the majority's opinion which overrules appellant's points of error, and which overrules appellee's cross-points regarding the DTPA and delay damages. I am unable to agree, however, with that portion which sustains appellee's cross-point regarding usury, and I respectfully dissent therefrom.

In 1980, appellee bought a tract of real property from appellant, giving appellant a promissory note in the amount of $160,000. The note, which was secured by a deed of trust on the property, provided for interest at the rate of 10% per annum. It provided for monthly payments of $1,334.12, with a balloon payment due at the end of five years. The note further provided that upon default in the punctual payment of the note or any part thereof, the borrower would pay, as attorney's fees, an additional 10% of the principal and interest then owing, if the note were placed in the hands of an attorney or collected through judicial proceedings, or if suit were brought thereon. After about four years of making the monthly payments, appellee sought to sell the property and pay off the remaining balance on the note. During this period of time, however, appellee did not make its August 1, 1984, payment timely. Whether appellant gave permission to delay that payment until the closing of the sale was a disputed issue. In any event, appellant demanded additional moneys, presumably under the provision cited above, before he would give appellee a release so the property could be sold. Fearing that it would lose its purchaser, appellee agreed to pay, and did pay, an additional $5,000. Appellee then sued and recovered its $5,000, plus $5,000 attorney's fees.

Article 5069–1.06, Tex.Rev.Civ.Stat.Ann. (1987), provides that, "Any person who contracts for, charges or receives interest which is greater than the amount *authorized by this Subtitle*, shall forfeit to the obligor three times the amount of usurious interest contracted for, charged or received...." (Emphasis added.) It is undisputed that the note was not usurious on its face. Accordingly, the relevant statute is that in force at the time of the alleged charging of interest, August 1984.

In August 1984, the maximum legal (i.e., *authorized*) rate of interest was at least 18%, whether under article 5069–1.04, Tex.Rev.Civ.Stat.Ann. (1987), article 1302–2.09, Tex.Rev.Civ.Stat.Ann. (1980), or article 1302–2.09A, Tex.Rev.Civ.Stat.Ann. (Supp. 1989). The act which amended article 5069–1.04 and added article 1302–2.09A in 1981 specifically provided that it was applicable "to all claims of forfeiture made after the effective date of this Act...." 1981 Tex.Gen.Laws, ch. 111, § 27, at 286.

Therefore, the total interest *authorized* by the above statutes on a $160,000 loan over a four year period was at least $115,200. At the 10% rate applicable to its note, appellee would have paid $64,000. Assuming that the additional $5,000 paid constituted interest, the total interest paid was $69,000. After spreading this amount over the four year period, as I believe we must under article 5069–1.07, the effective interest rate was approximately 10.78%.

Although the authorized legal rate under any of the above statutes was at least 18%, the majority is of the view that those statutes do not apply because appellee did not

*agree* to more than 10%. Under this view, the charging or receiving of even a penny of interest beyond what was specified in the parties' contract would be not merely a breach of contract, but usury. It would become virtually impossible for a creditor to charge any type of late charge, even in the utmost good faith, since a subsequent jury finding that the technical wording of the contract did not entitle them to recover the late charge would subject them to usury penalties in every instance.

This view finds apparent support in *Carr Well Service, Inc. v. Skytop Rig Co.*, 582 S.W.2d 500 (Tex.Civ.App.1979, writ ref'd n.r.e.), and *Engineering Technology Analysts, Inc. v. Robray Offshore Drilling Co., Ltd.*, 611 F.2d 540 (5th Cir.1980). In those cases, however, no specified rate of interest whatsoever was agreed to by the parties, thereby bringing into play the six percent maximum rate mandated by article 5069–1.03, Tex.Rev.Civ.Stat.Ann. (1987). Accordingly, the statements in those cases regarding the necessity of an agreement to trigger the application of article 1302–2.09 are dicta. On the other side of the ledger are cases such as *Butler v. Holt Machinery Co.*, 741 S.W.2d 169 (Tex.App.1987, writ denied), in which a corporation agreed to pay eleven percent interest per annum but did *not* agree to pay additional fees for late payments. The court held:

> While the [trial] court treated the late payment fees as interest, it properly did not find them to be usurious. At maximum, the fees would have increased the total interest rate on each contract by five percent per annum. Even with the increase, the contracts would not have exceeded the maximum legal rate allowed.

*Id.* at 176. Thus, there appears to be a conflict on this point between at least two courts of appeals. Nor, in my opinion, did the supreme court address this precise question in *Lawler v. Lomas & Nettleton Mortgage Investors*, 691 S.W.2d 593 (Tex. 1985). There, the supreme court determined that the debtor had in fact agreed to pay a rate of interest up to 18%, so the question of whether it constituted usury to charge interest to a corporation at an effec-

tive rate of 10.139% when the contract specified a lower rate was not addressed. Accordingly, I do not believe this question has yet been settled in Texas.

Usury statutes are penal in nature and must be strictly construed. *Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 476 (Tex.1988). In my opinion, the idea that a rate of 18% is not "authorized by law" because the parties' written agreement states a lower rate is a strained reading of the language in articles 5069–1.04, 1302–2.09, and 1302–2.09A. It may comport with a *liberal* reading of the language, but it does not comport with the *strict* reading I believe we are required to give it.

Having reached the conclusion stated above, it is of no great moment that appellant did not present this specific argument to this Court or apparently to the trial court. We must affirm a correct lower court judgment on any legal theory before it, even if the court gives an incorrect reason for its judgment. *Guaranty County Mutual Ins. Co. v. Reyna*, 709 S.W.2d 647 (Tex.1986). Since appellant's pleading contained not only a general denial, but also a special denial "[t]hat Defendant charged, contracted for or received interest at a usurious rate from the Plaintiff ...," the whole issue of usury, with the exception of any affirmative defenses that may not have been pleaded, was before the trial court. It was, after all, appellee's burden to prove that appellant had contracted for, charged, or received usurious interest.

There is, in addition, an alternative ground on which I would affirm the trial court's judgment as to usury. As appellee concedes in its brief, "The trial court did not make findings of fact or conclusions of law with respect to Austin Gallery's claim for penalties under Article 5069–1.06(1)." Appellee did not request any additional findings or conclusions. Accordingly, under Rule 299, Tex.R.Civ.P.Ann. (1977), appellee waived that ground of recovery. *Pinnacle Homes, Inc. v. R.C.L. Offshore Engineering Co.*, 640 S.W.2d 629 (Tex.App. 1982, writ ref'd n.r.e.).

I would affirm the judgment of the trial court in its entirety.

## ON MOTION FOR REHEARING

POWERS, Justice.

Both parties have moved for rehearing. We find the contentions raised in Hardwick's motion to be without merit and overrule them. Austin Gallery assigns two errors in its motion. We will sustain one and overrule the other.

Austin Gallery contends we erred in holding it was not entitled to the $5,037.68 awarded it by the trial court as "actual damages," *and* entitled as well to the statutory penalties for usury authorized by Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(1) (Supp.1987). We conclude we did err in that respect and reform our original judgment to award Austin Gallery recovery of its "actual damages" in the amount of $5,037.68 as found by the trial court, together with the $15,113.04 in statutory penalties authorized by article 5069–1.06(1). Austin Gallery contends in its second assignment of error that we erred in not also awarding it recovery under the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.43 (1987). We conclude we did not err in that respect. Accordingly, we overrule the assignment of error.

## DAMAGES FOR USURY

Under the parties' executory contract, Hardwick demanded and Austin Gallery paid him $5,037.68. Austin Gallery then sued Hardwick for that sum in addition to the statutory penalties authorized for usury by article 5069–1.06(1). The trial court awarded Austin Gallery the amount paid but denied it recovery of the statutory penalties for usury.

The common law authorizes recovery of usury even when paid voluntarily. *Bexar Building & Loan Ass'n v. Robinson*, 78 Tex. 163, 14 S.W. 227, 228 (1890). The Supreme Court of Texas has recently held that the statutory penalties for usury are recoverable in addition to the sums recoverable at common law on a claim of usury when the statutory and common law causes of action are properly pleaded and claims of error regarding them are preserved on appeal. *Danziger v. San Jacinto Savings Ass'n*, 732 S.W.2d 300, 304 (Tex.1987); *see also Commercial Credit Equipment Corp. v. West*, 677 S.W.2d 669, 678–80 (Tex.App.1984, writ ref'd n.r.e.). The amount of usury paid is recoverable at common law in an action for equitable restitution based on a theory that the usury is money fraudulently "had and received." *Merryfield v. Willson*, 14 Tex. 112, 113 (1855). The cause of action obviously antedates the statutory remedy given by article 5069–1.06(1). Nothing in that statute evidences a legislative intention to supplant the common-law remedy. In light of this and the holding in *Danziger*, we view the statutory remedy of article 5069–1.06(1) as cumulative of the common-law remedy.

In its pleadings, Austin Gallery contended and prayed for judgment in the amount of the $5,037.68 paid by it and received by Hardwick. Austin Gallery recovered that sum after trial. Austin Gallery pleaded independently the statutory action for penalties under article 5069–1.-06(1), but it was denied recovery. We conclude this was error, as was our original action in denying Austin Gallery recovery of the cumulative remedies. We hold accordingly.

## DECEPTIVE TRADE PRACTICES

We originally held that Austin Gallery was not entitled to yet another statutory remedy in addition to that for usury and its common-law remedy for money fraudulently had and received. We refer to Austin Gallery's claim for damages based upon deceptive trade practices as authorized by Tex.Bus. & Com.Code Ann. § 17.50 (1987). We rejected the claim on the ground that § 17.43 forbids recovery under § 17.50 if penal sums are recovered under another statute, such as article 5069–1.06(1). Austin Gallery contends the circumstances of the present controversy justified a recovery notwithstanding § 17.43. We disagree.

Austin Gallery's contention rests on a theory that in the present case recovery

under one statute would be based upon a different act or practice than under the other statute. *Birchfield v. Texarkana Memorial Hospital,* 747 S.W.2d 361 (Tex. 1987); *Mayo v. John Hancock Mutual Life Ins. Co.,* 711 S.W.2d 5 (Tex.1986); *Kish v. Van Note,* 692 S.W.2d 463 (Tex.1985).

The trial court found that Hardwick "represented to the title company and to [Austin Gallery] that he was entitled under his real estate lien note to 10% of the principal balance as a penalty for ... late payments on the note, and initially [Hardwick] would not sign a release of lien unless he was paid the additional 10%." The court also found that Hardwick, in refusing to sign the release of lien, acted "on the mistaken and unfounded belief that the language of the real estate lien note ... supported his claim for an additional 10% of the principal." Austin Gallery suggests that Hardwick's "misrepresenting" his entitlement to the 10% under the note is a different act or practice from his "charging" of the 10%. We disagree. We believe the findings refer simply to one act and its cause. We therefore overrule the second assignment of error brought by Austin Gallery.