KAROTKIN 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-194-CV





MICHAEL BRUCE KENTOR,



 APPELLANT


vs.





ALDEN KAROTKIN, ET. AL.,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 493,061, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING



 





 Alden Karotkin filed suit against Michael Kentor to collect a promissory note. 
Kentor counterclaimed based on usury and also brought a third-party action for usury against
Mark Rosenfield and Sandra Hauser, two attorneys Karotkin had employed to collect the note. 
The district court rendered judgment for Karotkin against Kentor on the promissory note and
denied all of Kentor's usury claims. Kentor appeals the district-court judgment. We will affirm.



BACKGROUND


 In 1984, Alden Karotkin and Michael Kentor were divorced. The property
settlement agreement included, in part, a promissory note executed by Kentor and payable to
Karotkin in the principal amount of $189,495.50. The note had an annual rate of interest of ten percent (1) and provided for payments of $2,500 on the first of each month until the entire note was
paid. Each monthly payment was to be applied first to interest and then to principal. The note
included a savings clause which provided that "[n]othing in this note shall authorize the collection
of interest in excess of the highest rate allowed by law."

 From February 1984 through August 1987, Kentor made payments on the note,
some of which were untimely. After August, he made no other payments in 1987 but did make
three doubled "catch-up" payments of $5,000 each in February, April, and July 1988. These
payments placed Kentor current on the note through January 1988. (2)



Collection Letters


 Karotkin hired Mark Rosenfield, an attorney, to collect the note, and later
employed Sandra Hauser, also an attorney, for the same purpose. Both attorneys sent Kentor
collection letters which form the basis of Kentor's claim that Karotkin and her attorneys attempted
to collect usurious interest from him.



A.  The Rosenfield Collection Letter

 On October 4, 1988, Rosenfield sent Kentor a collection letter stating that the note
was in default and, as a result, was being accelerated and demanding three sums: (1)
$135,419.72, representing the remaining principal balance as of January 31, 1988, which was the
end of the last installment period paid; (2) $22,500, representing the nine delinquent monthly
installments due from February 1988 through October 1988, which the letter clearly stated
represented both principal and interest; and (3) $937.15, representing interest on those same nine
delinquent payments. 

 At trial, Rosenfield admitted that he had negligently and unintentionally made a
mistake in the collection letter. Although he was correct in requesting the nine delinquent
payments, as is plain from the letter and the amortization schedule, he failed to credit the principal
portion of the delinquent payments to the principal balance due as of January 31, 1988. Thus, the
collection letter demanded a larger sum from Kentor than was actually due and owing on October
4, 1988. Kentor insisted that the additional charge was a demand for usurious interest. Karotkin
and Rosenfield denied any intent to charge usurious interest.

 On October 14, 1988, Kentor agreed with Rosenfield to a workout arrangement on
the note. Kentor paid installments totalling $7,000 at irregular intervals through January 1990,
after which he made no more payments under either the accelerated note or the workout plan.



B. The Hauser Collection Letter

 On September 27, 1990, Hauser sent Kentor a letter in which she demanded three
payments: (1) $135,419.72, representing the same remaining principal balance as of January 31,
1988; (2) $73,000, representing the thirty-two monthly installments due from February 1988
through September 1990, less the $7,000 representing the workout payments; and (3)
$208,419.72, representing interest on the thirty-two delinquent payments.

 Because Hauser had used the Rosenfield collection letter as her baseline for drafting
her collection letter, she, too, committed the same negligent error that Rosenfield had committed. 
She properly requested thirty-two delinquent installments, but failed to credit the principal balance
with the principal portion of those installments. Kentor maintains that this additional charge was
also a charge for usurious interest. Karotkin and Hauser respond that they did not intend to
demand usurious interest in that collection letter.



Trial and Judgment


 After these collection efforts ultimately failed, Karotkin filed suit to collect the note
on July 3, 1991. Kentor counterclaimed alleging the collection letters were usurious. In addition,
Kentor brought a third-party action for usury against both Rosenfield and Hauser, individually. 
At trial, Rosenfield and Hauser conceded that the letters overcharged principal. The letters
specifically stated that each demanded monthly installment of $2,500 consisted partly of principal
with the remainder attributable to interest. Because the $135,419.72 balance requested in both
letters encompassed the note's principal amount in its entirety, had the delinquent installments
been paid, the outstanding principal balance should have been reduced by the corresponding
amount of principal included in each installment of $2,500. Kentor characterizes this as an
overcharge of interest, while the appellees consider it an overcharge of principal.

 At trial, both sides presented expert witness testimony concerning the calculation
of principal and interest for the note. Judy Soslau, who testified for Kentor, treated the entire
overcharge as interest. She insisted that any amount requested that exceeded the accelerated
principal was interest, because it comprised the compensation for the use, forbearance, or
detention of the principal. (3) Tom Glass, the appellees' expert witness, testified that the attorneys'
requests for the delinquent payments did not result in an overcharge of interest; he testified that
the overcharge resulted from the failure to properly credit the principal portion of each payment
to the accelerated principal amount due and owing as of January 31, 1988, the starting point of
the calculations in each letter.



A. Kentor's Evidence

 Soslau's calculations show that as of October 1, 1988, the unpaid principal balance
was $135,419.67 (4) and the accrued interest on the outstanding principal was $9,015.61. 
Therefore, regarding the Rosenfield collection letter, Soslau stated that the proper amount due on
October 4, 1988, at a ten percent interest rate was $144,435.28; that the $157,919.66 amount (5)
demanded by Rosenfield exceeded that amount by $13,484.38; and that the effective interest rate
for that collection letter, therefore, was 24.9567 percent. She determined that, as of September
30, 1990, the principal owed was $142,495.60 and the interest chargeable was $23,406.00. 
Soslau's testimony was that the $208,419.34 amount (6) demanded by Hauser exceeded $165,901.60,
the proper amount due, at a ten percent interest rate, on September 27, 1990, by $42,517.74, and
resulted in an effective interest rate of 24.7961 percent.

 In her calculations, Soslau assumed that all payments up to October 1, 1988, were
made on time, that is, at the first of each month, for purposes of computing interest. After that
date, she used the actual payment dates in her calculations. She considered the spreading period
to extend from February 1, 1988, to October 1, 1988, in her determination of the interest rate in
Rosenfield's collection letter. For Hauser's collection letter, Soslau spread the interest from
October 1, 1988, the point of acceleration, to September 27, 1990, the date of Hauser's letter.



B. Appellees' Evidence

 Glass's computations differed substantially from those of Soslau. He made several
calculations, based on permutations of various factors: the interest rate, payment dates, and
spreading period. First, he used interest rates of both ten percent and eighteen percent in his
calculations, rather than only ten percent. Second, Glass determined accrued interest using the
actual dates that Kentor made payments, instead of the due dates. Third, he both spread the
interest over the entire duration of the note and used an unspread methodology, rather than using
only a limited spreading period. 

 Under one of Glass's calculations, by allocating past due monthly payments to
principal and interest in accordance with the amortization schedule, the interest portion of the
letters did not even exceed the ten percent interest rate specified in the note. Under another of
his calculations, even allocating the entire overcharge to interest, Glass testified that the resulting
interest rate, in each collection letter, was less than the statutory maximum, eighteen percent. See
Tex. Rev. Civ. Stat. Ann. art. 5069-1.04(b) (West 1987).



C. Trial-Court Judgment

 Based on the expert testimony, the district court denied Kentor any usury damages. 
In its judgment, the court awarded Karotkin the principal note balance as of January 31, 1988, of
$135,419.72; (7) prejudgment interest of $53,648.07; and attorneys' fees. The court concluded that
the demands made in the two collection letters did not constitute a charge for usurious interest. 
The court made the following findings of fact:



 9. The Court finds that the excess demand appearing in the 10/4/88 Letter
resulted from Rosenfield's failure to credit the outstanding principal due on
the Note after receipt of the January 1, 1988 installment with the amount of
principal which would have been included in the installments due for the
months of February 1988, through October 1988, had such installments been
paid.


12. The Court finds that the excess demand appearing in the 9/27/90 Letter
resulted from Hauser's failure to credit the outstanding principal due on the
Note after receipt of the January 1, 1988 installment with the amount of
principal which would have been included in the installments due for the
months of February 1988, through September 1990, had such installments
been paid.



(Emphasis added). In addition, the court did not find that the attorneys intended to charge interest
in excess of the amount authorized by the note and did not find that the two requests for payment
in excess of that authorized by the note resulted from accidental or bona fide error. (8) Furthermore,
the court concluded that eighteen percent was the statutory limit of chargeable interest on the note. 
Because the court employed an eighteen percent maximum for purposes of determining usury, it
was not necessary for the court to allocate the charges in the collection letters between principal
and interest. The trial court concluded that, regardless of how the interest was apportioned, under
an eighteen percent interest rate, usurious interest was not charged. The court also concluded that
Kentor could not maintain a direct action for usury against the attorneys who were non-owners
of the note. Finally, the court concluded that the savings clause in the note would not bar
Kentor's usury claims.



CONTENTIONS OF THE PARTIES


 Kentor does not contest his indebtedness on the note. His appeal from the district-court judgment is limited solely to the denial of his usury claims. On appeal, Kentor raises two
points of error attacking the legal and factual sufficiency of the evidence. In point of error one,
he maintains that the evidence is not sufficient to support the district court's conclusion that the
collection letters do not charge usurious interest. Several issues are raised within this single point
of error: (1) the appropriate interest rate for resolving the usury claim, i.e., the ten percent rate
for which the parties contracted or the statutory maximum of eighteen percent; (2) the proper
calculations regarding principal and interest; and (3) the applicability of double penalties. In his
second point of error, Kentor contends that the evidence is insufficient to support the trial court's
conclusion that Kentor has no causes of action for usury against Rosenfield and Hauser,
individually. All appellees bring forth a cross-point alleging the trial court erred in concluding
that the savings clause in the note does not bar Kentor's usury claims.



DISCUSSION


 Article 5069-1.06 provides that "[a]ny person who contracts for, charges or
receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the
obligor three times the amount of usurious interest contracted for, charged or received . . . ." 
Tex. Rev. Civ. Stat. Ann. art. 5069-1.06(1) (West 1987). All parties agree that the promissory
note on its face was not usurious and that no usurious interest was received by any appellee. 
Kentor, however, claims that this is a "charging" usury case, contending that the collection letters
sent by Rosenfield and Hauser constitute an extracontractual demand for usurious interest. 
Kentor's argument is premised on his contention that the trial court had to consider the excess
charge contained in the collection letters as entirely interest. He relies on the decision in Steves
Sash & Door Co. v. Ceco Corp., 751 S.W.2d 473, 475 (Tex. 1988), in which the Texas Supreme
Court defined principal as the portion of a debt "used, forborne, or detained." The only method
by which Kentor can prevail on this appeal is to treat the entire excess charge in the collection
letters as interest. We disagree with Kentor's argument because it is obvious from the face of the
collection letters and from the amortization schedule that at least a portion of the demanded
delinquent back-payments constituted principal.

 In his first point of error, Kentor argues that the trial court erred in concluding that
the collection letters do not charge usurious interest. He contends that the evidence is legally and
factually insufficient to support the district court's conclusion in this regard. 

 In reviewing a legal-insufficiency, or "no evidence" challenge, an appellate court
may consider only the evidence and reasonable inferences drawn therefrom which, when viewed
in their most favorable light, support the finding of the trier of fact. We disregard all evidence
and inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986);
Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). Any probative evidence supporting the
finding is sufficient to overrule the point of error. McGalliard v. Kuhlmann, 722 S.W.2d 694,
697 (Tex. 1986); see William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and
"Insufficient Evidence," 69 Tex. L. Rev. 515, 522 (1991). An appellate court should sustain an
"insufficient evidence" point of error only if, after reviewing the entire record, the finding is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 In his argument, Kentor relies heavily on our decision in Hardwick v. Austin
Gallery of Oriental Rugs, Inc., 779 S.W.2d 438 (Tex. App.--Austin 1989, writ denied), for his
proposition that the entire amount of an extracontractual demand must be deemed interest as a
matter of law. In Hardwick, the Austin Gallery executed a promissory note, secured by real
property, payable to Dr. Hardwick. Subsequently, the company informed Dr. Hardwick that it
wished to pay off the note and to receive a release of all liens. The note provided for an
attorneys' fee charge of ten percent of the outstanding principal in the event of untimely payment. 
Arguably under this provision, Dr. Hardwick charged and received an amount in excess of $5,000
from the company to sign a release of liens on the property. The company paid the disputed
charge and then filed suit against Dr. Hardwick for usury. The trial court in Hardwick found that
nothing in the note, the deed of trust, or the law authorized Dr. Hardwick to charge this excess
amount and concluded that the $5,000 constituted an extracontractual charge for usurious interest. 
On appeal, we concluded that because the charge was not contemplated by the parties within the
contract, the entire $5,000 had to be considered interest as a matter of law. Therefore, Hardwick
clearly involved an extracontractual charge that was treated by this Court as a "charge for"
interest. Since the extracontractual demand exceeded the interest chargeable, this Court in
Hardwick concluded that the usury statutes had been violated.

 We conclude Hardwick is distinguishable and thus not controlling. Unlike
Hardwick, the demands in this case involve attempted collection efforts on a delinquent note. 
Rosenfield and Hauser sent the collection letters pursuant to the objective of collecting the note;
they requested both delinquent back-payments and the accelerated principal amount due and owing
on the note. The letters clearly stated that each back-payment constituted both principal and
interest. Further, both Kentor and Karotkin had access to the amortization schedule upon which
the demands for delinquent back-payments were based. That schedule clearly identified the
portion of each installment which was principal and the portion constituting interest. Therefore,
the trial court was entitled to rely on the testimony of the parties, the experts, the amortization
schedule of the note, and the plain language of the collection letters, to support its conclusion that
the overcharge in the collection letters did not constitute interest, but rather, resulted from the
failure to credit and reduce the note's principal balance.

 Additionally, in Hardwick, there was a serious dispute between the parties as to the
extracontractual charge demanded by Dr. Hardwick. Dr. Hardwick contended that the amount
was justified on the basis of the attorneys' fees provision in the note. The company, on the other
hand, contended that the $5,000 was a monetary demand, outside the confines of the note
contract, which was nothing more than a usurious-interest charge for the signing of release papers
to which the company was clearly entitled after prepaying the entirety of the note. Here, in
contrast, the two collection letters requested delinquent back-payments from Kentor that he
concedes were due and owing. The amount ($2,500) and frequency (monthly) of these delinquent
payments were not only undisputed, but also were clearly within the confines of the contract and
contemplation of the maker (Kentor) and owner (Karotkin) of the note in question. Therefore,
we regard our decision in Hardwick as clearly distinguishable and not dispositive of this appeal. 


 On the other hand, we regard our recent decision in McPherson Enterprises, Inc.
v. Producers Cooperative Marketing Association, Inc., 827 S.W.2d 94 (Tex. App.--Austin 1992,
writ requested) as controlling here. In McPherson, Bandera Feed owed Producers $41,470. 
Producers failed to credit a payment of $31,654 and, as a result, sent Bandera Feed a bill for the
entire original principal amount of $41,470 plus interest of $622. Bandera Feed contended that
this was a usurious-interest charge because the actual balance was $9,816 and, therefore, the
maximum amount of interest legally chargeable was $136. We stated that the amount specified
in the bill as interest was excessive solely because of the failure of Producers to reduce the
principal amount of the debt. The crux of the McPherson case concerned the effect of the failure
to credit the principal amount of a debt that results in an overcharge. We stated in McPherson
that such an overcharge was not a demand for usurious interest.

 Here, the Rosenfield and Hauser collection letters make clear that the back-payments consist of both principal and interest. Additionally, Glass testified that, by allocating
the demanded past-due installments to principal and interest according to the amortization
schedule, the attorneys overcharged principal, not interest. The trial court specifically found that
the excess demand resulted from a failure to reduce the principal by an appropriate amount. 
These findings of fact are unchallenged by Kentor. Applying the McPherson rationale to the facts
of this case, we likewise conclude that the overcharge caused by the failure to properly credit
principal does not constitute a demand for usurious interest. Therefore, we hold that the evidence
was legally and factually sufficient to support the district court's conclusion that the collection
letters did not charge usurious interest. Accordingly, we overrule Kentor's first point of error.

 In his second point of error, Kentor attacks the trial court's conclusion that he has
no usury causes of action against Rosenfield and Hauser, individually, as non-owners of the note,
on the grounds that the evidence is legally and factually insufficient to support such a conclusion. 
Also, Karotkin, Rosenfield, and Hauser bring one cross-point. They object to the trial court's
conclusion that the savings clause did not bar Kentor's claim for usury. Because we conclude that
usurious interest was not charged, we need not reach Kentor's second point of error and the
appellees' cross-point of error.



CONCLUSION


 Finding no error, we affirm the judgment of the trial court.



 

 Mack Kidd, Justice

[Before Justices Aboussie, Jones and Kidd]

Affirmed

Filed: March 3, 1993

[Publish] 

1.   The interest rate applied to both "Unpaid Principal from Date of Funding" and
"Matured Unpaid Amounts," according to the terms of the note.
2.   Because he had not paid the May 1987 installment, the catch-up payments advanced
Kentor only five months, from September 1987 through January 1988, instead of six
months.
3.   Tex. Rev. Civ. Stat. Ann. art. 5069-1.01(a) (West 1987); see, e.g., Steves Sash &
Door Co. v. Ceco Corp., 751 S.W.2d 473, 475 (Tex. 1988); McPherson Enters., Inc. v.
Producers Coop. Mktg. Ass'n, Inc., 827 S.W.2d 94, 96 (Tex. App.--Austin 1992, writ
requested).
4. The amount that Soslau concludes is the outstanding principal balance is five cents
less than the amount shown in the amortization schedule. Several other of Soslau's totals
differ from appellees' totals by a few cents. The differences are caused by rounding and
are immaterial to our holding in this case.
5.   This amount includes only the outstanding principal balance and the requested
back-payments. It does not include the interest on the delinquent installments.
6.   This amount also includes only the outstanding principal and the requested back-payments.
7.   The trial court found that the principal balance due and owing on the note was
$141,510.75. The court also found that Karotkin elected to pursue only the $135,419.72
principal balance demanded in the two collection letters and thus waived any claim for
the excess.
8.   Both Rosenfield and Hauser testified that the overcharge contained in their
collection letters resulted from their negligence and carelessness. They do not meet the
requirement of statutory accidental and bona fide error that we have held to be "available
only when the evidence shows that the charge of usury results from ignorance of a
material fact or from other unintentional mishaps in office practice or routine which may
be fairly characterized as 'clerical' errors." Esparza v. Nolan Wells Communications, Inc.,
653 S.W.2d 532, 536 (Tex. App.--Austin 1983, no writ). As a result, they do not attack the
trial court's failure to find on this issue.