Vineyard Bay 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-196-CV





VINEYARD BAY DEVELOPMENT COMPANY, INC.,



 APPELLANT


vs.





THE VINEYARD ON LAKE TRAVIS AND FELTON M. BAKER,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT



NO. 92-02626, HONORABLE JOE B. DIBRELL, JUDGE PRESIDING



 





 The Vineyard on Lake Travis (the "Partnership") brought this suit seeking a release
of liens on three lots and seeking usury penalties against the Vineyard Bay Development
Company, Inc. ("Vineyard Bay") for charging interest on a debt that had been extinguished. The
trial court granted the Partnership's motion for summary judgment and awarded attorney's fees. 
Vineyard Bay appeals, complaining that there is no evidence to support the summary judgment,
that there is no usury and no merger as a matter of law, and that fact issues preclude summary
judgment and the award of attorney's fees. We will affirm the trial court's judgment.



BACKGROUND


 This lawsuit arises from a complicated series of real estate transactions involving
property referred to as the Vineyard on Lake Travis (the "Vineyard property"). The Partnership
acquired the Vineyard property in 1982, giving two promissory notes (the "Stewart notes") to
several individuals referred to as "the Stewarts." These two notes were secured by liens on each
of fifty-six lots comprising the Vineyard property. In 1983 and 1984, the Partnership sold three
of those lots to unrelated buyers, accepting three notes receivable as part of the purchase price. 
In 1986, the Partnership sold the remaining fifty-three lots to Vineyard Bay; as part of the
purchase price Vineyard Bay assumed the Partnership's outstanding indebtedness to the Stewarts
by promising to pay the total amount due on each of the two Stewart notes.

 Because the Stewart notes were secured by liens on all fifty-six Vineyard property
lots, and Vineyard Bay had only acquired fifty-three of those lots, the Partnership obtained the
Stewarts' agreement to grant a partial release of the three lots sold to unrelated buyers upon
receipt of $115,600 plus twelve percent interest accruing from January 8, 1986. The Partnership
and Vineyard Bay then executed the three documents at the heart of this dispute: (1) a promissory
note from the Partnership to Vineyard Bay for $119,640.78 (the $115,600 required to obtain the
partial release plus an additional $4000 indebtedness related to the closing) plus interest at twelve
percent; (2) a security agreement called a "collateral transfer of note," transferring to Vineyard
Bay the right to receive up to $115,600 plus interest out of payments to the Partnership from the
three lot owners as security for the Partnership's promissory note; and (3) an assumption
agreement clarifying that because the notes receivable owned by the Partnership were being used
to repay the Stewart notes on which Vineyard Bay was now the primary obligor, the Partnership
had "re-assumed" liability on the Stewart indebtedness to the extent of $115,600 plus interest. 
The assumption agreement also clarified that any monies Vineyard Bay received from the three
notes receivable would be paid directly to the Stewarts to procure the partial release of the three
lots. Two years later, Vineyard Bay sold the Partnership's $119,640.78 promissory note plus
accrued interest for $100,000 cash to Houston Helicopters, Inc., a corporation owned by one of
the partners in the Partnership; Vineyard Bay also assigned to Houston Helicopters its right to
receive payments from the three notes receivable that secured the $119,640.78 indebtedness. 
Vineyard Bay paid the bulk of the cash proceeds to the Stewarts. By this time, however, principal
plus interest required to procure a release of the liens on the three lots totalled $151,815.12. The
record does not reflect if any prior payments had been made to the Stewarts. In any event,
Vineyard Bay did not request, nor did the Stewarts grant, a partial release of the liens on the three
lots.

 In 1989, the Stewarts assigned to Vineyard Bay their interest in the two Stewart
notes. That is, Vineyard Bay, the primary obligor on the Stewart notes, became the holder of
those notes. Subsequently, the Partnership asked Vineyard Bay, now standing in the shoes of the
Stewarts, to release the liens on the three lots. Vineyard Bay responded that it would release the
liens only when the Partnership paid $76,686.36, representing the $51,815.12 alleged
"deficiency" between the proceeds the Stewarts received from Vineyard Bay's sale of the
Partnership's promissory note and the amount required to secure a partial release at that time, plus
accrued interest of $24,871.26. The Partnership answered that it owed no money to Vineyard Bay
after its sale of the note to Houston Helicopters and that the liens on the three lots had been
extinguished when Vineyard Bay, as primary obligor, became the holder of the Stewart notes and
liens. Vineyard Bay insists that the Partnership remains liable for a portion of the Stewart
indebtedness under the assumption agreement, and that there has been no merger that would
extinguish the liens.



ANALYSIS


 In granting the Partnership's motion for summary judgment, the trial court released
the liens on the three lots, imposed a usury penalty of three times the interest charged on a
nonexistent debt, and awarded attorney's fees. We will group our consideration of the appellant's
eight points of error into four categories: (1) whether the Partnership had any remaining liability
under the assumption agreement after Vineyard Bay sold its $119,640.78 note and transferred its
security interest in the three notes receivable; (2) if there was no continuing liability, whether
Vineyard Bay committed usury by demanding interest on a non-existent debt; (3) whether the liens
on the three lots survived Vineyard Bay's acquisition of the Stewart notes and liens on the fifty-six
Vineyard property lots; and (4) whether the trial court erred in awarding attorney's fees on the
summary judgment evidence before the trial court.



STANDARD OF REVIEW


 The standards for reviewing a motion for summary judgment are well established: 
(1) the movant for summary judgment has the burden of showing that no genuine issue of material
fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether disputed
material fact issue precluding summary judgment exists, evidence favorable to the nonmovant will
be taken as true; and (3) every reasonable inference will be indulged in favor of the nonmovant
and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546,
548-49 (Tex. 1985).



THE ASSUMPTION AGREEMENT


 We will examine the text of the assumption agreement in the context of the overall
transaction to determine if the Partnership remained liable to the Stewarts under the assumption
agreement after Vineyard Bay transferred its interest in the Partnership's $119,640.78 note and
security agreement. The drafting memorializing this transaction cannot be characterized as artful;
nevertheless, we read the three documents before us to provide, in a convoluted manner, for the
partial release of the Stewarts' liens on the three lots not owned by Vineyard Bay once it became
the primary obligor on the Stewart notes. If the owners of the three lots paid the sums they owed
the Partnership by virtue of the three notes receivable, the Partnership, no longer indebted to the
Stewarts, would turn the proceeds over to Vineyard Bay, which would then forward the proceeds
to the Stewarts. Upon receipt of $115,600 plus interest, the Stewarts would release the liens on
the three lots. To accomplish this, the Partnership agreed to "re-assume" $115,600 of the total
indebtedness on the Stewart notes, promised to pay Vineyard Bay the same amount, and
transferred to Vineyard Bay up to $115,600 plus twelve percent interest of its right to receive
money from the unrelated buyers under the three notes receivable. The document entitled
"Collateral Transfer of Note" operated to transfer the Partnership's interest in these three notes
receivable to Vineyard Bay, which in turn had to pay all receipts, up to $115,600 plus interest,
to the Stewarts.

 The assumption agreement outlines the amount required to release the lien on each
of the three lots; it refers to the Partnership's promissory note and to the collateral transfer of
note. It provides that Vineyard Bay will hold the three notes receivable from the sale of the lots
as collateral "until such time as this assumption agreement is fully complied with[.]" The
agreement further states that when it has been fully complied with the parties will terminate it in
writing. Either Vineyard Bay's release of the three notes receivable or a written termination
instrument would serve as evidence of compliance with the assumption agreement. Vineyard Bay
did release the collateral; the parties did not execute a written termination instrument.

 Vineyard Bay's second and third points of error complain that no summary
judgment evidence supports the district court's determination that Vineyard Bay's demand for
interest was based on a debt evidenced by the Partnership's promissory note rather than the
assumption agreement, and that there is no summary judgment evidence that the Partnership has
fulfilled its obligations under the assumption agreement. In its fourth point of error, Vineyard
Bay argues that summary judgment was improper because there was a fact issue as to whether it
charged interest under the assumption agreement or under the Partnership's promissory note. We
may sustain none of these points of error unless we determine that the Partnership remained liable
to the Stewarts under the assumption agreement after Vineyard Bay sold the $119,640.78 note and
released its security interest in the notes receivable. We hold that the assumption agreement was
fully complied with once Vineyard Bay sold its note and transferred its security interest in the lot
owners' three notes receivable.

 Although Vineyard Bay assumed the Partnership's indebtedness on the Stewart
notes, which was secured by liens on all fifty-six Vineyard property lots, the money needed to
release the liens on the three lots was due and payable to the Partnership from the unrelated
buyers. The promissory note, the transfer of collateral in the notes from the lot owners, and the
assumption agreement all required the Partnership to pay to Vineyard Bay, and Vineyard Bay in
turn to pay to the Stewarts, sufficient funds to obtain a partial release of the liens on those three
lots. The assumption agreement memorializes the Partnership's agreement to take responsibility
for paying that amount of the Stewart indebtedness attributable to the three lots never conveyed
to Vineyard Bay. (1) The promissory note and collateral transfer of note provide the mechanism by
which the Partnership would meet its obligation. The Partnership's obligation to reimburse
Vineyard Bay for debt over and above that related to the property it actually received was
inartfully characterized as an "assumption agreement." The mistake Vineyard Bay makes is to
argue that this assumption created new obligations between the Partnership and the Stewarts when
it was simply a term used to describe the Partnership's acknowledgement that Vineyard Bay be
reimbursed for that portion of the Stewart indebtedness corresponding to the three lots owned by
other parties. The promissory note obligated the Partnership to transfer funds in the amount of
$119,640.78 plus interest to Vineyard Bay; the transfer of the notes receivable was security for
this obligation. It also served to ensure that the funds came from the proper parties, the three lot
owners who actually would benefit from a release of the liens.

 If, as Vineyard Bay argues, the Partnership also owed $115,600 plus interest to the
Stewarts under the assumption agreement, the transaction becomes nonsensical. If that were the
case, the Stewarts would be authorized to collect twice--once from Vineyard Bay by virtue of its
assumption of the two Stewart notes and once from the Partnership under the assumption
agreement. Rather, we read the three documents before us as creating obligations only between
the Partnership and Vineyard Bay, not as creating or modifying any liabilities between either party
and the Stewarts. As the parties are now positioned, Vineyard Bay, having stepped into the
Stewarts' shoes, now "owes itself" the balance on the Stewart notes. When it sold the
Partnership's promissory note to Houston Helicopters, Vineyard Bay voluntarily renounced its
right to receive from the Partnership the full amount needed to release the liens on the three lots.
Vineyard Bay's belated attempt to recover $76,686.36 from the Partnership in exchange for the
partial release would provide it a double recovery; the documents do not support Vineyard Bay's
claim.

 The assumption agreement had no meaning apart from the transfer of collateral and
the Stewarts' agreement to grant a partial release. By its own terms the assumption agreement
provided that Vineyard Bay's release of the collateral would signal that the agreement had been
fully satisfied. Read together, the documents conclusively prove that after Vineyard Bay sold the
Partnership's promissory note and released its right to the collateral, the Partnership no longer had
any obligation to pay any portion of Vineyard Bay's indebtedness to the Stewarts.

 Vineyard Bay argues that the Partnership cannot have satisfied its liability under
the assumption agreement because there is no written instrument of termination. The parties'
failure to signify in writing that the assumption agreement had been fully complied with cannot
create obligations apart from those created by the three documents read together in the context of
these transactions. We overrule the third point of error that there is no summary judgment
evidence of an agreement to terminate the Partnership's obligations under the assumption
agreement after the sale of the note.

 Because we hold that the Partnership had no remaining liability under the
assumption agreement, it is of no consequence whether Vineyard Bay charged interest under the
assumption agreement or the note; the Partnership had no liability to Vineyard Bay under either. 
We overrule the second and fourth points of error.



WAS THIS USURY?


 Vineyard Bay concedes that the Partnership had no remaining liability to Vineyard
Bay under the $119,640.78 note that was sold at a discount; we have determined that the
Partnership also had no liability to Vineyard Bay under the assumption agreement. We now
consider appellant's fifth point of error, which asserts that as a matter of law, Vineyard Bay's
action in setting forth the amount of principal and interest required to obtain a release of lien
under the promissory note after it had been sold was not usurious. We will review the summary
judgment evidence in light of the case law appellant cites.

 Vineyard Bay acquired the Stewart notes and liens in 1989. In 1992, the
Partnership asked Vineyard Bay to release the liens covering the three lots in question. On
February 11 and 28, 1992, Hugh Robertson, President of Vineyard Bay, twice responded by letter
demanding $51,815.12 in principal and $24,871.26 in interest before the liens would be released. 
In his letter dated February 28th, Robertson states that "[Vineyard Bay] does not believe there is
a reason to execute releases on the above mentioned lots until such time as the [Partnership]
discharges its obligation to pay [Vineyard Bay] the full principal release amounts plus interest due
under the Stewart liens."

 Vineyard Bay argues that its action does not constitute the charging of usury as that
term has been defined under two of our three recent decisions. In McPherson Enterprises., Inc.
v. Producers Cooperative Marketing Association, Inc., 827 S.W.2d 94 (Tex. App.--Austin 1992,
writ denied), this Court held that after its failure to credit a partial payment on a loan, a creditor
that demanded the entire principal, plus interest at the lawful rate, had charged too much principal
but had not charged a usurious rate of interest. We noted that any other interpretation of the
usury statute could permit any creditor sending a bill for a disputed debt balance to be charged
with usury. Id. at 96; see also Kentor v. Karotkin, 852 S.W.2d 261 (Tex. App.--Austin 1993, writ
denied) (miscalculation resulting from failure to properly credit prior payments was an overcharge
of principal, not a usurious charge of interest).

 Appellant asks that we extend our holding in McPherson Enterprises and Kentor
to exclude from a charge of usury a demand for principal and interest on a non-existent debt. We
decline to do so. This case does not involve a miscalculation of the amount of principal owed on
an unliquidated debt; it involves a unilateral demand for principal and interest on a note that the
creditor no longer owned. Vineyard Bay calculated the deficiency between the accrued principal
and interest owed at the time it sold the Partnership's promissory note and the cash received; it
demanded twelve percent interest on this sum from the date of the sale until the request for the
release of liens nearly four years later. The summary judgment evidence includes Vineyard Bay's
endorsement of the $119,640.78 promissory note to Houston Helicopters. Charging interest on
a non-existent debt, a note that the creditor no longer owns, falls within the statutory definition
of usury, "interest in excess of the amount allowed by law." Tex. Rev. Civ. Stat. Ann. art 5069-1.01(a) (West 1987); see Coppedge v. Colonial Sav. & Loan Ass'n, 721 S.W.2d 933, 936 (Tex.
App.--Dallas 1986, writ ref'd n.r.e.). We overrule the fifth point of error.



MERGER OF DEBT 


 In its sixth and seventh points of error, Vineyard Bay argues that the district court
erroneously found that when the Stewart notes were assigned and transferred to Vineyard Bay,
the liens on the three lots were released and of no further effect. Vineyard Bay contends in point
of error six that because it never held title to the three lots, the liens could not be released under
the merger of estates doctrine which requires a merger of legal and equitable title. We do not
address this point of error because the Partnership does not argue that the Stewart liens were
extinguished under the merger of title doctrine. Rather, the Partnership asserts that when the
Stewarts assigned the Stewart notes to Vineyard Bay and Vineyard Bay became the holder of those
notes, the debt was discharged by the merger of debt doctrine. Under this doctrine, the liability
of all parties is discharged when any party who has no right to action or recourse on the
instrument reacquires the instrument in his own right. See Tex. Bus. & Com. Code Ann. §
3.601(c)(1) (West Supp. 1994).

 When Vineyard Bay assumed the Stewart notes as part of the consideration it gave
in exchange for the Vineyard property, it became the primary obligor on those notes. See Straus
v. Brooks, 148 S.W.2d 393, 396 (Tex. 1941) (noting that when an assumption is consideration
for the purchase of property the party making the assumption becomes the principal obligor on
the notes). Vineyard Bay correctly states in its brief that when a party reacquires an instrument
in his own right, his liability on the debt is discharged. Therefore, when Vineyard Bay acquired
the two Stewart notes, the debt was discharged. (2) When a debt is discharged, the liens securing
that debt are extinguished. See Milburn v. Athans, 190 S.W.2d 388 (Tex. Civ. App.--Fort Worth
1945, writ dism'd) ("The lien is extinguished with the debt, whether it is ever formally released
in writing or otherwise.").

 Vineyard Bay argues, however, that the Partnership is still liable under the Stewart
notes because of the assumption agreement, which Vineyard Bay interprets as an assumption of
some of the Stewart indebtedness occurring subsequent to Vineyard Bay's assuming the Stewart
notes from the Partnership. We first note that the assumption agreement was part of the overall
transaction on February 27, 1986, not a subsequent event. Moreover, as already discussed in this
opinion, the assumption agreement created no obligation between the Partnership and the
Stewarts, and any obligations of the Partnership to Vineyard Bay under the assumption agreement
were discharged when Vineyard Bay sold the $119,640.78 promissory note to Houston
Helicopters. We overrule Vineyard Bay's seventh point of error.



ATTORNEY'S FEES


 In its eighth point of error, Vineyard Bay asserts that the trial court erred by
granting an award of attorney's fees as part of the summary judgment because a genuine issue of
material fact exists as to the amount and reasonableness of the fees requested by the Partnership. 
We disagree.

 The reasonableness of attorney's fees is generally a question of fact. Tesoro
Petroleum Corp. v. Coastal Ref. & Mktg., Inc., 754 S.W.2d 764, 767 (Tex. App.--Houston [1st
Dist.] 1988, writ denied) (citations omitted). The affidavit of the attorney representing the movant
will support an award of attorney's fees in a summary judgment proceeding. General Specialties,
Inc. v. Charter Nat'l Bank-Houston, 687 S.W.2d 772, 774 (Tex. App.--Houston [14th Dist.] 1985,
no writ). The attorney for the non-movant may create a fact issue by filing an affidavit contesting
the reasonableness of the fees set forth in the affidavit of the movant's attorney. Id. In this case,
the Partnership filed affidavits of two attorneys, both of whom served as counsel for appellees in
this matter. Both attorneys' affidavits itemized the services performed in connection with the
litigation and stated that $7500 was a reasonable fee. To controvert these affidavits, Vineyard Bay
filed the affidavit of attorney Daniel H. Johnston, Jr. In this affidavit, Johnston stated that in his
opinion the legal services performed for the Partnership should have taken no more than ten hours
of an attorney's time. Johnston stated: "Based upon a maximum of 10 hours of attorney's time
to perform these services, the fees requested by Plaintiff would be based upon an attorney
charging $750.00 per hour. In my opinion, $750.00 per hour is not a reasonable fee."

 We conclude that this affidavit was not sufficient to create a fact issue because
Johnston does not state that his opinion of the reasonableness of the attorney's fees charged was
based on personal knowledge of the legal services performed in this case. See Tex. R. Civ. P.
166a(f) (requiring that supporting and opposing affidavits be made on personal knowledge);
Brownlee v. Brownlee, 665 S.W.2d 111 (Tex. 1984) (requiring that affiant positively and
unqualifiedly represent that statements in affidavit are true and within affiant's personal
knowledge). In his affidavit, Johnston does not state that his opinions are based on personal
knowledge, nor does he indicate that he is familiar with the complexities of the transaction at issue
in this case. Though he claims to be "thoroughly familiar with the usual and customary charges
for legal services rendered in connection with cases such as the one in issue," he does not claim
to have reviewed the file or familiarized himself in any way with this particular transaction such
that he could estimate how many hours of legal work would be required. The requirement in Rule
166a(f) that affidavits be made "on personal knowledge" is satisfied by an affirmative showing
how the affiant became personally familiar with the facts. Coleman v. United Sav. Ass'n of Tex.,
846 S.W.2d 128 (Tex. App.--Dallas 1993, no writ). Because Johnston's affidavit makes no such
showing, it does not meet the requirements of Rule 166a and was properly disregarded by the trial
court.

 Faced with only uncontroverted summary judgment evidence, the trial court could
have awarded attorney's fees in the amount supported by the uncontroverted evidence or it could
have determined that attorney's fees were not recoverable as a matter of law. American 10-Minute
Oil Change v. Metropolitan Nat'l Bank-Farmer's Branch, 783 S.W.2d 598 (Tex. App.--Dallas
1989, no writ). The trial court was entitled to render judgment in the amount of attorney's fees
requested in the uncontroverted affidavits of Brown and Tingley, attorneys for the Partnership. 
Consequently, Vineyard Bay's eighth point of error is overruled.

 Finding no error, we overrule Vineyard Bay's first point of error which asserts
broadly that summary judgment was improper, and affirm the judgment of the trial court.



 

 Bea Ann Smith, Justice

Before Justices Aboussie, Kidd and B. A. Smith

Affirmed

Filed: February 16, 1994

Do Not Publish

 
1. The assumption agreement states:


It is agreed between [the Partnership] and [Vineyard Bay] as follows:

 

1. [The Partnership] agrees to pay the sum of $115,600.00 of the remaining
collective unpaid balances due and owing on the [Stewart notes], together
with twelve (12%) percent interest on said sum of $115,600.00 from
January 8, 1986, until such time as the [liens on the three lots] are
released from the operation of the Stewart Liens.
2. Though the Partnership rather than Vineyard Bay was the original maker of the
note, Vineyard Bay stepped into the Partnership's shoes when it assumed the note from
the Partnership. Therefore, the legal effect of the Stewarts' assignment of the Stewart
notes to Vineyard Bay was the same as if the original maker had reacquired the notes.