Opinion issued April 10, 2003







 
 
 



In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00281-CV
____________
 
BOB STRINGER AND RUTH STRINGER, Appellants
 
V.
 
MODESTA PERALES, Appellee
 

 
 
On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 00-17312
 

 
 
MEMORANDUM OPINION
          A jury found Bob and Ruth Stringer, appellants, breached the contract for deed,
violated the Deceptive Trade Practices Act (DTPA)


, and committed fraud, theft, and
usury when they evicted Modesta Perales, appellee, from her home. The jury
awarded Perales $1.3 million in damages, including attorneys’ fees, mental anguish,
and exemplary damages. The trial court added a usury penalty of $241,000.
          The Stringers argue that the evidence does not support the jury findings of (1)
DTPA violations, fraud, and theft or (2) damages for lost profits, relocation expense,
and lost personal property. The Stringers also contend that there is no basis for usury
penalties. We affirm.
Factual and Procedural Background
          The Stringers agreed to sell their home to Perales under a contract for deed for
$105,000. Perales made a $20,000 down payment, and the Stringers financed the
remaining $85,000 at nine percent interest. Perales was to make 120 monthly
payments of $1076.74 and to pay all property taxes and insurance. Under the contract
terms, if a payment was in default for more than 15 days, the Stringers had the right
to repossess the property and consider all previous payments to be rent.
          Over the next 59 months, Perales made only 37 payments, but many of the
payments were for more than her scheduled payment amounts, and her balance of
$41,519 was actually less than she would have owed had she paid only the designated
payment each month. The Stringers argued that Perales was contractually obligated
to make at least one payment a month. If she chose to make more, that would shorten
the length of the loan, but she was required to make a payment each month. Perales,
however, contended that, because her balance was less than it would have been had
she paid only the monthly payments, she was not in default. Furthermore, Perales
testified that when she gave Mrs. Stringer one of the lump payments, Perales told
Mrs. Stringer she wanted “to make some months ahead.” 
          The relevant dates and events are as follows:


August 23, 1993

Stringers and Perales enter into contract for deed; 10 year
amortized payment schedule providing for payment of
120 monthly installments of $1076.74 



October 1994

Perales made $12,000 payment Stringers did not credit to
payment schedule; instead, Ruth Stringer, unilaterally,
shortened loan term from 120 months to 97 months



February 6, 1996

Stringer notified Perales she was three payments behind



March 3, 1996 

Stringer notified Perales she was four months behind 



July 9, 1997

Charles Tiemann, Stringers’ lawyer, sent Perales default
notice (Perales actually $14,550 ahead of schedule)



October 29, 1997

Stringer notified Perales her payments were four months
past due 



December 19,1997

Tiemann sent another default notice (Perales $17,586
ahead)



early 1998

Money Mortgage approved Perales for loan to pay off
balance of contract



June 10, 1998 

mortgage company’s surveyor issued survey showing
Perales’s garage encroached onto another lot


 



 

Stringers served Perales with a notice to vacate



June 25, 1998

Stringers filed “Complaint for Forcible Detainer” in
justice court for $46,575.50



July 15, 1998

Perales called Stringer and was told not to worry about
forcible detainer because Tiemann was out-of-town



July 22, 1998

Stringers obtain default



August 4, 1998

Tiemann sent mortgage company figures for payoff good
until August 14



 

Tiemann told mortgage company Stringers would not
foreclose



August 10, 1998

mortgage company notified Tiemann that documents were
signed and loan would be funded upon receipt of warranty
deed



 

justice court issued an eviction order



 

Stringers obtained writ of possession



August 14, 1998

terms of payoff expired



August 17, 1998

Stringers notified mortgage company they were not going
to deliver warranty deed



 

constable removed all of Perales’s personal property, her
truck, her dog, her inventory of her furniture business, all
records from her furniture business, and changed the locks
on her home



 

contents of Perales’s home moved to Security Storage



September 24, 1998

Perales moved belongings to Memorial Park Mini Storage



August 1999

Memorial Park Mini Storage sold Perales’s belongings for
delinquent rent payments



 
          Perales sued the Stringers for breach of contract, fraud, violations of the DTPA,
abuse of process/malicious prosecution, intentional infliction of emotional distress,
and promissory estoppel.
          A month before trial, Stringer found a desk calendar with additional payment
information noted on it, but she shredded the calendar after providing the information
to her accountant. During the 13-day trial, Ruth Stringer disputed payment amounts
and dates provided in her sworn interrogatory answers and she admitted destroying
the original payment records. The trial court ruled that Stringer’s destruction of the
calendar was spoliation and prejudicial because of the possibility that the calendar
contained additional payments. In three different places in the charge, the trial court
instructed the jury that
Parties to a lawsuit are under a duty to preserve evidence. In this case,
Ruth Stringer negligently or intentionally destroyed evidence of
payments made by Modest Perales. You must, therefore, presume that
the destroyed evidence was unfavorable to the Stringers as to what the
evidence may have shown about payments made by Modest Perales. 
The Stringers may overcome this presumption only if they have
convinced you, by a preponderance of the evidence, that the payments
were made, or were not made, as claimed by the Stringers.

The Stringers did not object to the submission of this instruction.
          The jury returned a verdict in favor of Perales on all issues.
          The Stringers’ appeal does not challenge the jury’s findings that they breached
two separate contracts; that this breach caused Perales at least $141,483 in out-of-pocket damages; that the Stringers committed the felony of altering a real estate loan
payment schedule with the intent to defraud Perales; or that Perales is entitled to
recover the attorneys’ fees awarded. They also do not challenge the trial court’s
instruction that the jury could draw a negative inference from the Stringers’
“negligent or intentional” destruction of evidence on the eve of trial. 
            The jury found that Perales paid $91,483 in principal and interest payments and
all payments for taxes and insurance. It found that Perales made $50,000 of
improvements to the property, lost $120,000 in profits from her furniture business,
incurred $50,000 in relocation expenses, lost personal property valued at $50,000,
incurred $600 in past medical expenses. The jury found that Perales sustained
$200,000 in mental anguish in the past, but none in the future. The jury found that
the Stringers demanded $51,708.95, which was not due, under threat that they would
enforce rights that they claimed under the contract of deed. The jury determined that
the Stringers received $86,483 in principal and interest from Perales. They awarded
Perales $500,000 in exemplary damages, and $225,000 in attorneys’ fees.
Non-Contract Claims
          In their first point of error, the Stringers argue that Perales cannot recover for
DTPA violations, fraud, or usury by repackaging breach of contract claims.
          The trial court submitted jury questions on each of these claims. The Stringers
made no objections to the jury charge; therefore, any complaint they may have
regarding the submission of the DTPA, fraud, or usury submissions are waived. See 
Tex. R. App. P. 33.1(a); Lotfi v. Williams, 18 S.W.3d 856, 858 (Tex. App.—Houston
[1st Dist.] 2000, pet. denied).
          We overrule the Stringers’ first point of error.
Causes of Action
          In points of error two, three, four, and ten, the Stringers argue that there was
legally and factually insufficient evidence of DTPA violations, fraud, reliance, and
theft. 
Sufficiency Standard of Review
          In reviewing a no-evidence point, we consider only the evidence and inferences
that tend to support the finding, disregarding all evidence and inferences to the
contrary. Vannerson v. Vannerson, 857 S.W.2d 659, 666 (Tex. App.—Houston [1st
Dist.] 1993, writ denied). If there is any evidence of probative force to support the
finding, i.e., more than a mere scintilla, we will overrule the point. Id. In reviewing
factual sufficiency points of error, we must examine all of the evidence in the record,
including any evidence contrary to the judgment, to determine if the challenged
finding is so against the great weight and preponderance of the evidence as to be
clearly wrong or unjust.   Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). Because
the jury is the sole judge of the credibility of the witnesses and the weight to be given
their testimony, we may not substitute our opinion for that of the trier of fact simply
because we disagree with the jury’s findings. See Herbert v. Herbert, 754 S.W.2d
141, 144 (Tex. 1988).
          DTPA
          The Stringers argue that the evidence is legally and factually insufficient to
support the jury’s answers to the DTPA questions.
          The jury was asked if the Stringers engaged in any false, misleading, or
deceptive act or practice that was a producing cause of damages to Perales. The
question included a definition of “producing cause,” and it defined “false, misleading,
or deceptive act or practice” as follows:
Representing that real estate has characteristics, uses, or benefits which
it does not have; or 
 
Representing that an agreement confers or involves rights, remedies, or
obligations that it did not have or involve, or which are prohibited by
law; or
 
Failing to disclose information about real estate that was known at the
time of the transaction with the intention to induce Modesta Perales into
a transaction she otherwise would not have entered into if the
information had been disclosed.

The Stringers do not contest the fact that the garage on the property deeded to Perales
encroached onto Lot 12—a lot not owned by Perales.          
          Perales testified that the Stringers indicated the property line included the
garage. The Stringers later admitted it did not. Even if the Stringers did not
knowingly make this misrepresentation, this would still be a DTPA violation because
knowledge, or any other degree of scienter, is not a prerequisite to DTPA liability for
actual damages. Henry S. Miller Co. V. Bynum, 797 S.W.2d 51, 55 (Tex.
App.—Houston [1st Dist.] 1990), aff’d, 836 S.W.2d 160 (Tex. 1992). The evidence
is legally and factually sufficient to support the jury’s finding that the Stringers
engaged in a false, misleading, or deceptive act.
          The jury was then asked if the Stringers engaged in any unconscionable action
or course of action that was a producing cause of Perales’s damages. The jury was
advised that “an unconscionable action or course of action is an act or practice that,
to a consumer’s detriment, takes advantage of the lack of knowledge, ability,
experience, or capacity of the consumer to a grossly unfair degree.”
          The Stringers contend it is inconceivable that they could take advantage of
Perales because she had equal knowledge of the payments she made. The Stringers
did, however, repeatedly represent to Perales in demand letters and in person that she
was in default of the contract for deed and that they had the right to evict her. The
Stringers do not contest the jury’s finding that they demanded payment of money
which was not due. The Stringers were represented by counsel during these threats,
but Perales was not. The evidence was legally and factually sufficient to support the
jury’s finding that the Stringers’ actions were unconscionable.
          Finally, the jury found that the Stringers’ failure to comply with a warranty was
a producing cause of Perales’s damages. The jury was instructed that the failure to
comply with a warranty includes failing to comply with an express warranty or the
implied warranty of good and merchantable title.


 The Stringers argue that there can
be no warranty until there is a conveyance. The Stringers further argue that this is in
fact another attempt at expanding the breach of contract claims. These are not
challenges to the sufficiency of the evidence. The Stringers did not object to the
submission of the warranty question at trial; therefore, they have waived its review
on appeal. See Tex. R. App. P. 33.1 (a); Lotfi, 18 S.W.3d at 858. 
          We overrule point of error two.
          Fraud
          In point of error three, the Stringers argue that the evidence was legally and
factually insufficient to support the jury’s findings that the Stringers committed fraud
and that the harm to Perales resulted from fraud. The Stringers base their argument
on the premise that “there cannot be actionable fraud where each of the parties is
equally cognizant of the facts.” Roan v. Reynolds, 364 S.W.2d 763, 766 (Tex.
App.—Amarillo 1963, writ dism’d); see also William B. Roberts, Inc. v. McDrilling
Co., Inc., 579 S.W.2d 335, 339 (Tex. App.—Corpus Christi 1979, no writ). It is the
Stringers’ position that there is no evidence that they had superior knowledge of
whether Perales was in default. For years, they had been sending Perales letters
notifying her of her delinquency. The Stringers then argue that “Perales never
testified that Mrs. Stringer had failed to credit all the payments.”
          In fact, the Stringers admitted they neglected to credit Perales with a $12,000
payment. Also, the spoliation instruction permitted the jury to assume there may have
been additional payments made, but the Stringers destroyed the evidence.


 
          The jury was instructed that fraud occurs when (1) a party makes a material
misrepresentation, (2) the misrepresentation is made with knowledge of its falsity or
made recklessly without any knowledge of the truth and as a positive assertion, (3)
the misrepresentation is made with the intention that it should be acted on by the
other party, and (4) the other party acts in reliance on the misrepresentation and
thereby suffers injury. The Stringers do not contest the sufficiency of the evidence
to support the jury’s finding that the Stringers “demand[ed] the payment of money
which was not due, under threat that they would enforce rights which they claimed
under the Contract for Deed.” The fraud question included a definition that
“misrepresentation” means, among other things, a false statement of fact.
          The evidence was legally and factually sufficient to support the jury’s finding
of fraud.
          The jury was then asked if it found by clear and convincing evidence that the
harm to Perales resulted from fraud. The evidence is legally and factually sufficient
to support the finding that Perales’s eviction resulted from the Stringers’ demand for
money which was not due.
          We overrule point of error three.
          Reliance
          In point of error four, the Stringers argue that there is legally and factually
insufficient evidence of reliance under the theories of DTPA and fraud. 
          We have already held that the evidence was legally and factually sufficient to
support the jury’s findings of DTPA and fraud; therefore, we overrule point of error
four.
          Theft
          In point of error 10, the Stringers assert that the evidence is legally and
factually insufficient to support the jury’s answer regarding theft.
          The Stringers argue that “no damage issue was conditioned on the answer to
this question” and that “breaching a contract is not a crime lest everyone who loses
a contract dispute be branded a criminal.” The Stringers did not object to the
submission of this question to the jury; therefore, any complaint they may have
regarding the submission of the theft question is waived. See Tex. R. App. P.
33.1(a); Lotfi, 18 S.W.3d at 858.
          We overrule point of error 10.
Damages
          In points of error five, six, seven, and eight, the Stringers argue that there was
legally and factually insufficient evidence to support damages for lost profits,
relocation expenses, loss of personal possessions, and usury. In point of error nine,
they contend that there is “no legal basis” to support a judgment for mental anguish
or exemplary damages. 
          Lost Profits
          In point of error five, the Stringers argue that there is legally and factually
insufficient evidence to support the jury’s finding of damages for lost profits. The
jury found that $120,000 would fairly and reasonably compensate Perales for lost
profits from her furniture business.


 
          Lost profits are damages for the loss of net income to a business measured by
reasonable certainty. See Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc., 877
S.W.2d 276, 279 (Tex. 1994). Recovery for lost profits does not require that the loss
be susceptible to exact calculation. Id. However, the injured party must do more than
show that it suffered some lost profits. Id. The loss amount must be shown by
competent evidence with reasonable certainty. Szczepanik v. First S. Trust Co., 883
S.W.2d 648, 649 (Tex. 1994); Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80,
84 (Tex. 1992). This is a fact-intensive determination. Heine, 835 S.W.2d at 84. At
a minimum, opinions or lost-profit estimates must be based on objective facts,
figures, or data from which the lost-profits amount may be ascertained. Szczepanik,
883 S.W.2d at 649; Heine, 835 S.W.2d at 84. Although supporting documentation
may affect the weight of the evidence, it is not necessary to produce in court the
documents supporting the opinions or estimates. Heine, 835 S.W.2d at 84. “Where
there is an established business, pre-existing profits may be used to evidence the
amount of loss with reasonable certainty.” White v. Southwestern Bell Tel. Co., Inc.,
651 S.W.2d 260, 262 (Tex. 1983). 
          The jury found that $120,000 would fairly and reasonably compensate Perales
for lost profits from her furniture business.


 The Stringers contend that Perales
cannot recover these damages because (1) her only evidence of lost profits “consists
of 24 words of her testimony” and (2) lost profits are consequential damages and
therefore cannot be recovered unless the Stringers contemplated the lost profits would
be a probable result of the breach.
          Perales testified that she sold home and computer furniture and mattresses from
her home. She would buy furniture and mattresses from a warehouse, and resell it to
customers. She testified that she would drive her truck to the warehouse once or
twice a week to get the furniture, and she estimated her profits were between $35,000
and $40,000 a year, but she was uncertain what her gross sales were.
          Perales testified that when she returned from jogging at the park one day, she
found a moving van in front of her house. She was told she could get a change of
clothes, but nothing else. They removed all her items, including her truck, her
computer, and all her paperwork related to her furniture business. Therefore, she
does not know the net figures relating to her business. 
          At trial, the Stringers did not dispute the fact that Perales’s eviction caused her
furniture business to go out of business. As a result, their complaints on appeal must
be confined to the amount of the lost profits, only. Perales testified that her furniture
company had profits of between $35,000 and $40,000 a year. As such, she testified 
that her furniture business was an established business that had pre-existing profits;
therefore, Perales’s testimony “may be used to evidence the amount of loss with
reasonable certainty.” White, 651 S.W.2d at 262.
          The Stringers next contend that lost profits are consequential damages because
the Stringers could not have anticipated that the lost profits would be a probable
result of the breach. See Mead v. Johnson Group, Inc., 615 S.W.2d 685, 687 (Tex.
1981). 
          The damages finding was predicated on an affirmative finding to the breach of
contract (both in 1993 and 1998), DTPA, or fraud questions. Foreseeability is not a
requirement for the recovery of damages under the DTPA. Doe v. Boys Club of
Greater Dallas, Inc., 907 S.W.2d 472, 481 (Tex. 1995); Smith v. Heard, 980 S.W.2d
693, 697 (Tex. App.—San Antonio 1998, pet. denied) (the producing cause nexus
required by the DTPA lacks the forseeability element of proximate cause, leaving
only cause-in-fact analysis). Therefore, the evidence was legally and factually
sufficient to support the damages for lost profits. 
          We overrule point of error five.
          Relocation Expenses
          The jury found that $50,000 would fairly and reasonably compensate Perales
for the reasonable and necessary relocation expenses incurred, including rent, storage
of furniture and property, travel and transportation for her two minor children, and
extra costs of meals. 
          Perales testified that she incurred $2,000 a month in expenses for three years,
or $72,000. She testified that these were extraordinary expenses she would not have
incurred if she had not been evicted. These expenses include traveling expenses
incurred while traveling to and from Omaha, where her children went to live after she
was evicted.
          The Stringers contend that Perales’s $2,000 a month expenses are simply living
expenses she would have incurred even if she had not been evicted. Furthermore, the
Stringers assert that, because Perales would have a $1,076.24 payment every month
had she not been evicted, that amount should be deducted from the $2,000 Perales
claims. Perales testified, however, that the rent she was having to pay after the
eviction was “like throwing money away.” Whereas, paying off the mortgage was
making an investment in her home.
          The Stringers argue that they could not have contemplated in 1993 that these
damages would result from their conduct. As previously stated, foreseeability is not
a requirement for the recovery of damages under the DTPA. Doe, 907 S.W.2d at 481;
Smith, 980 S.W.2d at 697.
          The evidence was legally and factually sufficient to support the relocation
expense damages. 
          We overrule point of error six.
          Loss of Personal Possessions
          The jury found that Perales’s personal property, including furniture, vehicles,
and business inventory was fairly and reasonably valued at $50,000.
          The Stringers concede that the following facts underlying this claim are
undisputed:
          (1)     the constable moved Perales’s property out of the house to Security
Storage;
 
          (2)     Perales paid $4600 to reclaim her possessions;
 
          (3)     Perales moved her possessions to Memorial Park Mini Storage, a less
expensive storage facility; and
 
          (4)     Memorial Park Mini Storage sold Perales’s possessions after she failed
to pay rent.

The Stringers argue that the causative link between the eviction and the eventual sale
of Perales’s possessions is too attenuated. We disagree. Security Storage was
charging Perales $30 a day to store her belongings. She chose to move them to a less
expensive facility, but had to pay $4600 to reclaim them. Once in the new facility,
Perales testified she was still unable to rehabilitate her furniture business because she
did not have the accounts receivables, and her computer records were removed. Her
sole source of income was gone. As a result, she was unable to pay the rent at even
the less-expensive storage facility.
          A jury may base a finding of proximate cause solely on circumstantial
evidence. See Summers v. Fort Crockett Hotel, Ltd., 902 S.W.2d 20, 25 (Tex.
App.—Houston [1st Dist.] 1995, pet. denied). To be a superseding cause, the
intervening force must have been unforseeable. See Phan Son Van v. Pena, 990
S.W.2d 751, 754 (Tex. 1999).
          The jury could have determined that it was foreseeable to the Stringers that
evicting Perales from her home, removing her sole source of income, and placing her
belongings in a facility that cost approximately the same as her payments under the
deed would ultimately result in the loss of her possessions.
          The evidence was legally and factually sufficient to support the jury’s award
of damages for loss of personal possessions. 
          We overrule point of error seven.
          Usury
          In point of error eight, the Stringers argue that there is legally and factually
insufficient evidence for usury penalties.
          Under Texas law, usury is defined as the contracting for, charging of, or
collecting of interest in excess of the amount allowed by law. See Tex. Fin. Code
Ann. § 301.002(a)(17) (Vernon Supp. 2003). Interest is defined as compensation for
the use, forbearance, or detention of money. Tex. Fin. Code Ann. § 301.002(a)(4)
(Vernon Supp. 2003). 
          Whether an amount of money is interest depends not on what the parties call
it, but on the substance of the transaction. Gonzales County Sav. & Loan Ass’n v.
Freeman, 534 S.W.2d 903, 906 (Tex. 1976). Thus, for example, the Texas Supreme
Court has held that a lender’s requirement that a borrower assume a third party’s debt
to the lender constitutes interest on the loan to the borrower. Alamo Lumber Co. v.
Gold, 661 S.W.2d 926, 928 (Tex. 1983). By the same token, not every obligation on
a borrower in connection with a loan is interest. For example, the supreme court has
held that a lender’s requirement that a borrower assume a third party’s debt to another
person does not constitute interest on the loan to the borrower. Victoria Bank & Trust
Co. v. Brady, 811 S.W.2d 931, 935-37 (Tex. 1991). Amounts charged or received in
connection with a loan are not interest if they are not for the use, forbearance, or
detention of money. See First Bank v. Tony’s Tortilla Factory, Inc., 877 S.W.2d 285,
288 (Tex. 1994) (bank’s fee for checks drawn on account with insufficient funds not
interest); Texas Commerce Bank-Arlington v. Goldring, 665 S.W.2d 103, 104 (Tex.
1984) (lender’s attorney’s fees charged to borrower not interest); Stedman v.
Georgetown Sav. & Loan Ass’n, 595 S.W.2d 486, 488 (Tex. 1979) (commitment fee
not interest). Interest is defined to include compensation allowed for the detention
of money. Tex. Fin. Code Ann. § 301.002(a)(4) (Vernon Supp. 2003). When a
creditor assesses a charge against a debtor who withholds payment when a debt is
due, the charge constitutes compensation for the detention of money, or interest. See
Hardwick v. Austin Gallery of Oriental Rugs, Inc., 779 S.W.2d 438, 443 (Tex.
App.—Austin 1989, writ denied); Dixon v. Brooks, 604 S.W.2d 330, 333 (Tex. Civ.
App.—Houston [14th Dist.] 1980, writ ref’d n.r.e.).
          To prove usury, a party must establish (1) a loan of money, (2) an absolute
obligation to repay the principal, and (3) the exaction of a greater compensation than
allowed by law for the borrower’s use of the money. See Tony’s Tortilla Factory,
877 S.W.2d at 287. Moreover, because usury statutes are penal in nature, they must
be strictly construed. Steves Sash & Door Co., Inc. v. Ceco Corp., 751 S.W.2d 473,
476 (Tex. 1988).
          Here, the trial court awarded Perales $241,709.85 for usury penalties. This
amount was apparently derived from the jury answers to the following questions:
Did Bob Stringer and Ruth Stringer demand the payment of money
which was not due, under threat that they would enforce rights which
they claimed under the Contract for Deed? (Yes)
 
What amount of money did the Stringers demand or receive pursuant to
such threats? ($51,708.95)

The trial court tripled the amount to $155,126.85 pursuant to Texas Finance Code
section 305.001(a)(1) which penalizes a creditor who contracts for, charges, or
receives interest that is greater than the amount authorized under the section. See
Tex. Fin. Code Ann. § 305.001(a)(1) (Vernon Supp. 2003). The Finance Code
provides an additional penalty for forfeiture of all principle and interest previously
paid if the creditor receives interest which is more than twice the legal amount. See
Tex. Fin. Code Ann. § 305.002(a) (Vernon Supp. 2003). The jury determined that 
Perales paid the Stringers $86,483 in principle and interest.


 That amount was added
to the tripled amount for a total of $241,709.85. 
          On appeal, the Stringers argue that there can be no finding of usury because the
jury question did not mention usury and there was no finding of excessive interest. 
Again, the Stringers did not object to the submission of the jury question; therefore,
any complaint they may have regarding the submission of these questions is waived. 
See Tex. R. App. P. 33.1(a); Lotfi, 18 S.W.3d at 858. 
          They next argue that there is no evidence of excessive interest. The contract
for deed was for a principle amount of $85,000. The jury found that the Stringers
demanded payment of $51,708.95 that was not due under the contract. The Stringers
do not argue that the evidence is insufficient to support this finding. They simply
argue that the evidence is insufficient to support the implication that the entire
amount represented excessive interest. Because the jury found none of the money
demanded was in fact due, if any of the $51,708.95 represented interest, there would
be usury. “Any interest charged in an interest-free period is in excess of twice the
legal rate of zero.” George A. Fuller Co. v. Carpet Serv., Inc., 823 S.W.2d 603, 604
(Tex. 1992).
          The evidence was legally and factually sufficient to support the usury penalties
because (1) the Stringers executed a contract for deed that loaned Perales money, (2)
Perales had an absolute obligation to repay the principal, and (3) the Stringers
threatened to enforce rights under the contract for deed through the exaction of a
greater compensation than allowed by law for Perales’s use of the money. See Tony’s
Tortilla Factory, 877 S.W.2d at 287.
          We overrule point of error eight. 
          Mental Anguish/Exemplary Damages
          In point of error nine, the Stringers argue that there is no legal basis to support
a judgment for mental anguish or exemplary damages. The jury found that $200,000
would fairly and reasonably compensate Perales for her past mental anguish. It also
found $500,000 in exemplary damages because the Stringers’ conduct was committed
knowingly and/or intentionally.
          The Stringers’ only contention is that these types of damages are improper in
breach of contract claims. See Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 71-72 (Tex. 1997) (mental anguish); Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617,
618 (Tex. 1986) (exemplary damages). We agree with this statement. Here, however,
there were findings of DTPA violations and fraud. We have already held that the
evidence was sufficient to support those findings. 
          We overrule point of error nine.
Prejudgment Interest
          In point of error 11, the Stringers argue that the trial court erred in its
calculation of prejudgment interest. 
          The trial court awarded Perales prejudgment interest beginning September 3,
1998. The Stringers state, “this date has no relevance to any date in the record,” and
assert that the prejudgment interest should start to run from 180 days after August 17,
1998, when Perales filed suit in county court to enjoin the execution of the eviction. 
This argument is based on section 304.104 of the Finance Code, which provides,
“prejudgment interest accrues on the amount of a judgment during the period
beginning on the earlier of the 180th day after the date the defendant receives written
notice of a claim or the date the suit is filed and ending on the day preceding the date
judgment is rendered.” Tex. Fin. Code Ann. § 304.104 (Vernon Supp. 2003). We
agree with the Stringers that it is unclear why the prejudgment interest began accruing
on September 3, when it is uncontested that Perales filed suit on August 17. See Miga
v. Jensen, 96 S.W.3d 207, 217 (Tex. 2002) (modified appellate court’s judgment to
reflect that prejudgment interest runs from the date suit is filed to the date of
judgment.) Prejudgment interest should have begun to run from August 17, 1998,
more than two weeks earlier than the judgment indicates. This error was, however,
harmless as it relates to the Stringers. 
          We overrule point of error 11.
 
 
 
 
Conclusion
We affirm the judgment.

                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Nuchia, Hanks, and Price.